### GREEN *v.* ANSLEY.

1. In an action by the owner of real estate for the difference between the defendant's bid at a sale made in May, and what the property brought at a like sale made in August, the second sale occurring by reason of the refusal of the defendant to comply with his bid at the first, it was necessary to prove that before making the second sale the plaintiff gave notice to the defendant of his election to resell; but it was not necessary that the notice should embrace any information as to the time and place of the intended resale.
2. The evidence failing to prove the requisite notice, the verdict was unwarranted, and the court erred in not granting a new trial.
November 6, 1893.

Action for damages. Before Judge MARSHALL J. CLARKE. Fulton superior court. September term, 1892.

HULSEY & BATEMAN and W. C. GLENN, for plaintiff in error. CANDLER & THOMSON, *contra.*

SIMMONS, Justice.

Green was the highest bidder at a public auction of a house and lot offered for sale by Mrs. Ansley, and his bid was accepted, but after a delay of some weeks he

declined to take the property, and it was again put up at auction and was sold to another person. The price obtained at the second sale was considerably less than the amount bid at the first sale, and Mrs. Ansley brought this action against Green for the difference and for expenses, etc. The case came to this court upon exceptions to the sustaining of a demurrer to the declaration, and the judgment of the court below was reversed. (82 *Ga.* 181.) On the trial there was a verdict for the plaintiff, and the defendant moved for a new trial, which was refused, and he excepted.

The main question argued before us was, whether the plaintiff was entitled to recover without proof of notice to the defendant of her intention to resell and of the time and place of the second sale. We think that, to authorize a recovery in this action, it was necessary that the defendant should be notified of the intention to resell at his risk and hold him bound for any difference between his bid and the price obtained at the resale, but it was not necessary, in addition to this, that any direct notice should be given him of the time and place of the sale. According to some of the authorities, the measure of damages where one refuses to accept land which he has contracted to buy, is the difference between the contract price and the salable value at the time the contract was broken; and this value may be conclusively established as against him by a resale, provided the vendor in reselling complies with the conditions the law imposes, as to diligence, etc. We think, however, that where a resale is resorted to in order to fix the measure of damages, the true test, if these conditions are complied with, is not the difference between the contract price and the value at the time of the breach, but the difference between that price and the price obtained at the resale, together with the expense incurred in reselling, without regard to what the value was at the time the contract

was broken. "The question is, how much worse [off] is the plaintiff by the diminution in value of the land, or the loss of the purchase money, in consequence of the non-performance of the contract?" Wood's Mayne on Damages, §243, (1 Am. ed.) If the vendor elects to keep the land as his own when the purchaser refuses to accept, he takes it at the market value at that time, and the difference between that value and the better price contracted for is the measure of his damage; but if he elects to treat the property as the purchaser's and to sell on the latter's account in order to get his purchase money, the deficiency in the proceeds must be the measure of the loss. In an action based upon the difference between the market value at the time of the breach and the contract price, the plaintiff, if he sees fit, may offer as evidence of that value the price obtained at a resale; and its admissibility and weight will depend upon the time and circumstances of the resale; but if the action is for the deficiency in the amount realized from the resale, the plaintiff must recover upon that basis alone, without regard to the market value at the time of the breach, and the amount obtained at the resale is either conclusive or else counts for nothing at all. The present action being upon the latter basis, and there being, moreover, no evidence of what the market value was at the time of the breach, and the price obtained at the resale being less, it seems, than the property would have brought at the time of the breach, the question of the market value at that time is not in the case; and the sole question to be considered is, whether the plaintiff, in reselling, proceeded in such manner as to render the result of the resale legally binding upon the defendant. In order to conclude the defendant in this manner, not only must it appear that the resale was made without unreasonable delay, with the same publicity and as far as possible under the same conditions as the first, and

with an honest effort to get the best price obtainable, but it must appear also that the defendant had notice that the sale was to be at his risk. The property resold at his risk is regarded as in some sense his own, and the result of the resale is in the nature of an adjudication against him; and before he should be charged with the deficiency, he should be afforded an opportunity to protect his interest and prevent a sacrifice of the property. Unless notice is given him that the property is held and will be sold at his risk, he has a right to assume, if it is sold again, that the vendor elected to retain and deal with it as his own and at his own risk. On this subject see: 2 Sutherland on Damages, §370, p. 1254 (2 ed.); 2 Sedg. Damages, §755; Tiedeman on Sales, §334 (1st ed.); Newmark, Sales, §405, p. 596; Kempner *v.* Heidenheimer, 65 Tex. 587; Leonard *v.* Portier, 15 S. W. Rep. 415 (Tex.), and other cases cited by these authorities. Some of these discuss the question of notice as applicable to sales of personalty, but the principle is applicable equally to sales of land. See Wood's Mayne on Damages, §243. In some cases notice of the time and place of the resale has also been held necessary, but the authorities in the main agree that where there is notice of the election to resell and hold the other party bound for the deficiency, no further notice is necessary. See authorities cited *supra*; also Lewis *v.* Greider, 49 Barb. 606, affirmed, 51 N. Y. 236, and Pollen *v.* Leroy, 30 N. Y. 549, overruling on this point McEachron *v.* Randalls, 34 Barb. 301. We are satisfied, at least, that such additional notice may be dispensed with where, as in this case, the resale, as well as the original sale, is at public auction, duly advertised in the locality of the sale. In such case the party sought to be charged with the deficiency is sufficiently protected by the requirement already referred to, that the second sale shall take place within a reasonable time and be given equal publicity

with the first. If this is done, one who has been notified of the intention to resell at his risk need have no difficulty in ascertaining the time and place of the sale. The declaration in the present case alleges notice both of the election to resell at the defendant's risk, and of the time and place of sale, but there is no evidence to sustain this allegation, and the court in charging the jury failed to instruct them on the subject. It follows from what has been said that a new trial should be granted.                                    *Judgment reversed.*