JAMES MCKIERNAN *et ux.* vs. HENRY VALLEAU.

PROVIDENCE—JANUARY 17, 1902.

PRESENT : Tillinghast, Rogers, and Douglas, JJ.

(1)   *Auctions.   Sales.   Vendor and Vendee.   Resale of Property.   Forfeit Money.*

Where a purchaser at auction sale makes a deposit on account of the purchase and subsequently fails to complete his purchase by paying the balance, according to the terms of sale, the vendor has the right to resell the property, either at auction or private sale, without notifying the purchaser, and charge the latter with any loss or damage sustained by reason of his failure to fulfill his contract, and also to deduct the same from any deposit in his hands arising from the first sale.   All that the

purchaser is entitled to is that the second sale shall be fair and honest, and that the vendor use all reasonable means to obtain the highest price for the property.

(2) *Auctioneers. Contracts. Principal and Agent.*

The authority of an auctioneer ceases as soon as the sale has taken place. After the sale, unless specially authorized, he cannot rescind or vary the contract or deal with the purchaser as to the terms upon which the title is to be made.

ASSUMPSIT for money had and received. The facts are stated in the opinion. Heard on petition of defendant for new trial, and petition granted.

TILLINGHAST, J. The uncontradicted facts in this case are substantially as follows, namely:

On the 7th day of October, 1896, one William W. Rickard, then of Providence but now in parts unknown, acting as the agent of the defendant, sold two lots of land to the plaintiffs at public auction for the sum of $1,205. By the terms of sale announced at the time by Rickard, who was the auctioneer, a cash deposit of five per cent. of the purchase price was required to be paid at the time of sale, and the balance within ten days at Rickard's office. Not having sufficient money with him to pay the said five per cent. at the time of sale, the plaintiff, James McKiernan, paid the auctioneer $5.00 and later in the day he paid him $115, taking his receipt for the $120 so advanced. Said receipt reads as follows:

"PROVIDENCE, R. I., October 7, 1896.

"Received of James Kiernan One Hundred and Twenty Dollars on a/c of purchase of lots 4 and 5 corner Blackstone & Stamford Streets, leaving a balance of Ten Hundred and Eighty-five Dollars to be paid on or before Saturday, October 17th, 1896, at 10 o'clock A. M., at my office, 27 Westminster Street.

"WM. W. RICKARD, Auctioneer."

On the following day Rickard paid this money to Valleau, the defendant, who caused a deed to be prepared and left with Rickard, signed but not acknowledged. Valleau's wife

signed the deed by her attorney. The defendant was prepared and ready to deliver the deed in accordance with the terms of sale. The plaintiffs did not comply with the terms of sale in the matter of paying the balance due as required thereby. The time for payment expired on October 17, 1896, but the plaintiffs did not go to Rickard's office until October 24. At that time they paid him $200, for which he gave his receipt but refused to give the deed until the balance was paid, according to the terms of sale. This receipt reads thus:

"Providence, R. I., Oct. 24, 1896.

"Received of James and Margaret Kiernan, Two Hundred dollars, on a/c purchase lot cor. Blackstone & Stamford Streets.
"$200.                                    Wm. W. Rickard."

Sometime after receiving said $200, and without informing the defendant that he had received it, Rickard disappeared and has not since been heard from. The defendant never authorized Rickard to vary the terms of sale aforesaid, and never knew of the receipt by him of said $200 until after the commencement of this action. At the time the plaintiffs bid off said lot at the auction sale, and at the times when they paid their money, as aforesaid, they did not know Valleau in the transactions, but supposed they were dealing with Rickard individually.

At the trial of the case the plaintiff, James McKiernan, testified that at the auction sale Rickard announced as a part of the terms of sale that if any purchaser did not wish to pay all the purchase money down he would advance what was desired on a mortgage on the lots ; and he says that he would not have bought the property but for such statement. He also testifies that Rickard promised him on the 7th of October, when he paid the $115, that he would have a mortgage ready for execution by plaintiffs on the 17th of October. Also that Rickard extended the time of payment of the balance due on account of said purchase until October 24th, when the whole matter was to be fixed up. The defendant was present at the auction sale and testifies that the terms of sale, which

were read by the auctioneer previous to the beginning of the bidding, were simply those which he had instructed him to make, viz.: five per cent. down and the balance within ten days upon the delivery of the deed, as aforesaid. He further testifies that no such promise was made by Rickard regarding the taking of the mortgage for a part of the purchase-price, as claimed by the plaintiffs, and also that if any such promise was made it was without his knowledge or consent and hence, he claims, it was only binding on Rickard personally. About a year afterwards the defendant sold said lots to other parties at private sale for the sum of $1,100, this being, according to the uncontradicted testimony, a fair price therefor and the best that he could obtain. The plaintiffs were not notified of such sale, nor were they notified of defendant's intention to sell the lots at their risk or otherwise.

At the trial of the case, which is assumpsit for the recovery of the money paid to Rickard as agent of the defendant, the jury returned a verdict for the plaintiffs in the sum of $398.58 ; and the case is now before us on the defendant's petition for a new trial on the ground that the verdict was against the law and the evidence and the weight thereof.

(1)  The specific questions presented for our decision are: 1, were the jury justified in finding that the plaintiffs were entitled to recover the first-named sum of $120 ? and, 2, were they justified in finding that the plaintiffs were entitled to recover the second-named sum of $200 ?

Defendant's counsel contends that the evidence does not warrant a verdict for the plaintiffs as to the first sum, and that even if it does, there is no evidence to sustain the verdict for the second sum.

We fail to see that the plaintiffs are entitled to recover either of said sums from the defendant. As to the first sum, while it appears that the defendant received it, it also appears that the loss and damage sustained by him by reason of the failure of the plaintiffs to fulfill their contract of purchase more than equaled that amount, and hence there is no indebtedness on the part of the defendant growing out of the receipt by him of said sum. .

We think the law is that where a purchaser at auction sale makes a deposit on account of his purchase, and subsequently fails to complete his purchase by paying the balance according to the terms of sale, the vendor has the right to resell the property and charge the first purchaser with the loss and damages sustained by reason of his failure to fulfill his contract, and also to deduct the same from any deposit which he may have in his hands arising from his first sale.

Ordinarily such resale is by auction in cases where the first sale was effected in that way, and the person in default is either actually or constructively notified thereof so that he may be present and protect himself by seeing that the sale is fair and honest, and that the property brings a fair price. But we do not think it is absolutely necessary that the property should be sold at auction, or that the first purchaser should be notified thereof. See *Lewis* v. *Greider*, 49 Barb. p. 638; *Noble* v. *Edwardes*, 5 L. R. Ch. D. 378; Benjamin on Sales, 6th Ed. 775–7. All that he is entitled to is that the second sale shall be a fair and honest one in every way, and that the vendor shall take all reasonable means to get the most he can for the property.

In the case at bar the plaintiffs are confessedly in default. They have failed to fulfill their contract of purchase; and in the face of this failure they are proceeding against the other party to the contract, who is not in default and who was able, ready, and willing to perform his part thereof not only during the time fixed by the terms of sale, but for a long time thereafter. And how a person who is thus in default can, upon that default and in consequence of that default, acquire any right to the money which he parted with as a security that there should be no default, it is difficult to conceive. It seems to us that it would be a violation of a well-settled principle to countenance any such claim. See *Depree* v. *Bedborough*, 4 Giff. 482; *Irwin* v. *Bleakley*, 67 Pa. St. 24. It is laid down as the law, in Bateman on Auctions, 110, that "Even in the absence of express stipulation, if the purchaser fails to complete, he will forfeit his deposit; and the vendor, having a lien on the estate for the purchase-money, will be

entitled to have it resold, and will be able to recover the deficiency, if any, from the purchaser, or to prove for it as a debt upon his estate if he has become bankrupt." But we are not called upon to go to the extent of holding that the deposit in this case was forfeited. The defendant does not claim said amount by way of forfeit, but by way of damages on account of the breach of said contract by the plaintiffs. And, as it appears that said sum of $120 is not sufficient to compensate him for his loss and damage occasioned by said breach, no question arises as to his right to have held it all in case it had exceeded the amount of his damages.

The cases relied on by plaintiffs' counsel are, mainly, either cases where the vendor resold upon condition broken by the vendee and then sued the vendee to recover his loss and damages in connection with the resale, or cases where the vendor sued to recover the purchase-price or to enforce specific performance of the contract, *Green* v. *Ansley*, 92 Ga. 647, and cases cited therein; *Hill* v. *Hill*, 58 Ill. 239; *Holland* v. *Rea*, 48 Mich. 218. But none of them are cases where the vendee, who was in default, sued to recover back a deposit made by him at the time of the sale, by way of earnest-money or security, for the faithful performance of his contract. They are not controlling, therefore, on the question here raised.

The cases in our own State, so far as we are aware, have been cases where the vendor has sought relief against the vendee. See *Upham* v. *Hamill*, 11 R. I. 565; *McGuinness* v. *Whalan*, 16 R. I. 558. See also *Arnold* v. *Carpenter*, 16 R. I. 560.

A vendor of property sold, either at public or private sale, ordinarily has several remedies to which he may resort in case of the failure of the vendee to fulfill his contract. He may hold the property and sue for damages for breach of the contract; he may tender the property and sue for the price agreed upon; he may file a bill for specific performance in cases where that remedy is permissible, as in a written contract for the sale of real estate; or he may resell the property, within a reasonable time and under proper conditions, and sue the original vendee to recover any damages sustained

by his default. But in all such cases the action is brought by the party who is not in default, and hence the rules by which they are governed are not fully applicable here.

(2)     As to the second sum paid to Rickard, as aforesaid, we think it is clear that the plaintiffs are not entitled to recover. At the time when this sum was paid to him he was not the agent of Valleau, and hence had no authority to receive the same. His authority as agent terminated on the 17th of October, 1896, and hence nothing which he subsequently did in the premises was binding upon the defendant. The court in its charge to the jury correctly stated the law upon this branch of the case in the following language :

"The auctioneer's authority ceases as soon as the sale has taken place ; and therefore after the sale, unless specially authorized, he cannot rescind or vary the contract or deal with the purchaser as to the terms upon which the title is to be made." The following extract from the charge is also pertinent :

"If the jury find that by the terms of the sale arranged by the defendant, the owner of the land, and Rickard, the auctioneer, not only the five per cent. on the purchase-money was to be paid to Rickard, but also that the balance thereof was to be paid to him at his office on or before October 17th, that fact is evidence of Rickard's authority, as defendant's agent in the dealings between plaintiff and Rickard subsequent to the auction sale, from which the jury may infer that he received the money as the defendant's agent. Well, if Rickard was to receive the balance on or before October 17th, and if the evidence limits his authority to that, that does not extend his authority beyond the 17th, but extends it as far as the 17th, and the jury may infer from that that he had a right to receive the money at that time as the defendant's agent. But it is necessary for the plaintiff to show you in this case that the authority that Rickard had extended beyond the 17th up to the time of the 24th. . . . You must find that from the evidence."

We fail to discover any evidence in the record from which the jury could have found any such extension of Rickard's

authority as agent, and we must therefore decide that the jury were not warranted in including said sum of $200 in their verdict.    In this connection it may also be said that it is immaterial whether the auctioneer made the statement attributed to him by the plaintiff James McKiernan, at the sale, regarding the taking of a mortgage for a part of the purchase-price.    For, even assuming that he did, and also assuming that it was binding on the defendant, yet as the plaintiffs failed to comply with the terms of sale, even as claimed by them, they have no standing in court as a claimant for said $200.    Had the plaintiffs gone to Rickard within the time limited and offered a mortgage for a part of said purchase-price, in accordance with the contract as claimed by them, and tendered the balance thereof in money, it would then have been for the jury to say whether they did not fulfill their part of the contract.    But as they did not, and as it does not appear that Rickard had any authority after the 17th of October, 1896, to receive said money as the agent of defendant, they are not in a position to claim said amount from him.    As he never received said last-named sum, therefore, and never authorized Rickard to receive it as his agent, the question as to whether, in case Rickard had remained his agent, the plaintiffs would have had a just claim for such part thereof as was in excess of the loss and damage sustained by the defendant, as aforesaid, does not arise.

Petition for new trial granted, and case remanded.

*P. J. McCarthy*, for plaintiffs.

*E. C. Peirce*, for defendant.