### FREEMAN v. KINSTON MFG. CO. et al.

(Circuit Court of Appeals, Fourth Circuit. May 13, 1916.)

No. 1411.

1. BROKERS ⟨⟩86(7)—COMPENSATION—ACTIONS—EVIDENCE.

In a broker's action for compensation for procuring a purchaser for standing timber, evidence *held* to warrant a finding that he relied on the vendor's representations as to the amount of the timber, and was not responsible because the purchaser refused to pay the agreed price; a shortage being discovered.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 116, 117; Dec. Dig. ⟨⟩86(7).]

2. BROKERS ⟨⟩62—COMPENSATION—RIGHT TO RECOVER.

Where a broker engaged to secure a purchaser for standing timber, relied on the vendor's statements as to the amount of the timber, and secured a purchaser, but the purchaser, on discovering a shortage, refused to pay the price fixed, the broker's right to commissions cannot be defeated because the vendor made his representations in good faith.

[Ed. Note.—For other cases, see Brokers, Dec. Dig. ⟨⟩62.]

3. BROKERS ⟨⟩71—COMPENSATION—SUBSEQUENT AGREEMENT.

Where a broker, who procured a purchaser for standing timber, agreed to accept a reduction of commissions, the purchaser discovering the shortage and refusing to pay the price first fixed, the broker cannot recover more than the amount subsequently agreed upon, but is entitled to recover the reasonable value of his services up to that amount; the purchaser accepting the timber at a reduced price.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 56; Dec. Dig. ⟨⟩71.]

4. BROKERS ⟨⟩50—COMPENSATION.

Where a broker procured a purchaser for standing timber, but the purchaser, on discovering a shortage, refused to accept the timber at the price fixed, and thereafter, the broker having consented to a reduction of commissions, the parties consummated the sale at the reduced price, the fact that the sale was made after the expiration of an option given the purchaser will not defeat the broker's recovery.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 68; Dec. Dig. ⟨⟩50.]

In Error to the District Court of the United States for the Eastern District of North Carolina, at Newbern; Henry G. Connor, Judge.

Action by E. B. Freeman against the Kinston Manufacturing Com-

pany and others. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

Walter H. Taylor, of Norfolk, Va., and M. T. Dickinson, of Goldsboro, N. C. (E. F. Aydlett, of Elizabeth City, N. C., and A. D. Ward, of Newbern, N. C., on the brief), for plaintiff in error.

O. H. Guion, of Newbern, N. C., and G. V. Cowper, of Kinston, N. C., for defendants in error.

Before PRITCHARD and KNAPP, Circuit Judges, and BOYD, District Judge.

KNAPP, Circuit Judge. Plaintiff in error, plaintiff below, brings this suit for commissions alleged to have been earned by him as a broker in selling a large quantity of standing timber and other property in North Carolina belonging to the defendant corporations. On the trial a verdict was directed for the defendants, and the case comes here on writ of error.

The contract of employment, which is evidenced by letters between the parties, was to the effect that the vendors were to get $350,000 for the timber, manufacturing plant, machinery, etc., plus a certain sum per thousand, about which there is no dispute, for the logs and lumber on hand, and that plaintiff was to have for his compensation whatever he could obtain for the property in excess of that sum. He claims to have procured a purchaser, one J. T. Deal, of Norfolk, Va., who was willing, able, and ready to pay $390,000 for the property, if the quantity of timber had equaled the amount which plaintiff says was represented to him by the owners and assumed to be approximately correct in the earlier stages of the negotiations. At any rate, Deal went to Kinston, N. C., near which the property was located, and spent two or three days in looking it over and acquainting himself generally with its condition and value. As the result an option contract was executed on the 4th of April, 1912, which gave Deal the right for 60 days to purchase the property, on specified terms of payment, for $390,000. Before the option was signed, and on the same day, the question arose as to what plaintiff would accept for his services, if there was found to be a shortage of timber and the price had to be reduced on that account, and plaintiff says it was agreed in that case that he should have $25,000, "and they could make any price they pleased."

Deal declined to take the property, for the sole reason, as plaintiff contends, that examination made while the option was running showed that the quantity of timber on the tract was not much more than half the amount which had been represented. Negotiations, however, continued, the details of which need not be recited, and Deal finally made an offer of $305,000, which the owners were apparently disposed to consider. The sale then seems to have hinged upon a settlement with plaintiff for his services. He was offered $5,000 and refused it. Deal proposed to add $2,500 to his offer, thereby in effect paying half the $5,000 which plaintiff was asked to take, but no agreement was reached. Negotiations were thereupon broken off, at least for the time being, and plaintiff went in quest of other purchasers. A few days later the

owners sold the property to Deal for $307,500. They refused to pay plaintiff anything for what he had done, and this suit followed.

The proofs offered by plaintiff consisted of the letters above referred to and his own testimony. These proofs tended to show, and would have permitted the jury to find, as it seems to us, that when this property was put in plaintiff's hands for sale the owners represented that there were 130,000,000 feet of standing timber; that plaintiff in good faith relied upon this representation, believing it to be substantially correct, and had no suspicion to the contrary when he undertook to find a purchaser; that he succeeded presently in interesting Deal in the property and introduced him to the owners; that Deal supposed there were 130,000,000 feet of timber, or thereabouts, as plaintiff had informed him, and that negotiations followed upon that basis; that Deal was willing, able, and ready, upon that assumption, to buy the property and pay $390,000 therefor, upon terms satisfactory to the owners; that after examination he refused to purchase at that price, or anything near it, because there was no such amount of timber as he had been led to suppose; that he would have bought it if the quantity of timber had approximated 130,000,000 feet; that the very large shortage ascertained was the sole cause of his failure to buy at the price named in the option contract; that at the time the option was given plaintiff agreed to accept for his services, and defendants agreed to pay, the sum of $25,000, if it turned out that there was a shortage of timber and a less price realized on that account; and that the subsequent sale was effected through his instrumentality.

[1, 2] Upon this evidence and the permissible inferences therefrom we are of opinion that plaintiff was entitled to have his case submitted to the jury and that it was error to direct a verdict for the defendants. It is argued that he failed to show any representations upon which he relied as to the quantity of timber and therefore cannot maintain his action; but we are persuaded that sufficient appears from the contents of the letters and plaintiff's testimony to present a question of fact upon that issue which the jury might reasonably have decided in his favor. All the circumstances now appearing indicate that he undertook to sell a quantity of timber which approximated 130,-000,000 feet, that his negotiations with Deal were upon that assumption, and that he was in no wise at fault because Deal did not take the property at the price named in the option. It was not necessary to show that the owners knowingly misrepresented the amount of property which they authorized the plaintiff to sell; it was enough to show that their statements were materially inaccurate. If plaintiff relied upon what they told him, his right to compensation cannot be defeated because the defendants honestly supposed they had the quantity of timber which plaintiff assumed and stated to Deal in soliciting him to become a purchaser. As the Supreme Court said in Dotson v. Milliken, 209 U. S. 237, 244, 28 Sup. Ct. 489, 492 (52 L. Ed. 768):

"It does not matter how much or how little the purchaser relied upon the defendant's representations if the plaintiff relied upon them and obtained a purchaser ready and able to purchase upon the basis that the defendant's representations to the plaintiff were true."

[3] The plaintiff, of course, cannot recover the $40,000 which he would have obtained if the property had been sold at the option price, because his own testimony shows that he agreed, at the time the option was given, to accept $25,000, if there proved to be a shortage of timber and the owners on that account sold to Deal at a lower price; and he says that was the first intimation he ever had that there might be a smaller amount of timber than had been theretofore assumed. But he had then procured a purchaser who seemed desirous to buy and to whom the defendants were willing to give a sixty-day option. If plaintiff gives a truthful version of what occurred when this option was signed, as the jury might believe, we perceive no reason why he may not enforce the agreement which he says was then made. Clearly, as we think, it was a question of fact for the jury.

[4] It is also contended that plaintiff is not entitled to compensation because the sale to Deal was not consummated within the limit of time fixed by the option contract. We are not impressed with the force of this contention. Plaintiff was not a party to that contract, and his rights are not to be determined by its provisions. His employment did not cease when the sixty days expired, and Deal declined to purchase at the option price. He appears to have participated in the subsequent negotiations and to have been actively related to the same until dispute arose as to his compensation. Nor could the defendants escape liability to him by assuming, when that dispute happened, to terminate his employment. The outstanding fact is that plaintiff procured the purchaser who actually bought the property and may fairly claim to have been the efficient agency in bringing about the sale. True, the sum accepted was not sufficient to entitle him to commissions under his original contract; but if the lower price resulted solely from a shortage of timber, for which plaintiff was in no wise responsible, he should not go unrewarded for his services in bringing the sellers and buyer together. Martin v. Holly, 104 N. C. 36, 10 S. E. 83; Trust Co. v. Goode, 164 N. C. 19, 80 S. E. 62; Ice v. Maxwell, 61 W. Va. 9, 55 S. E. 899.

We are also of opinion, from the record before us, that plaintiff is entitled to recover, independent of any contract, a reasonable compensation for his services, not exceeding $25,000. As already stated, his evidence tends to show that he brought about a sale of this valuable property, and that the owners accepted for the same much less than the price originally set, simply and solely because it turned out that they did not have nearly so much timber as was represented to plaintiff when he became their authorized agent. If he undertook to realize $350,000 net for them, and more or less in excess of that sum for himself, it was because he was led to believe that there was timber enough, with the other property, to bring the price he expected to get, and if the owners saw fit to sell at a much lower figure, because they had not the quantity of timber which plaintiff was warranted in offering for sale, they cannot escape liability for honest services of which they got the benefit, when it was their fault, and not the plaintiff's, as the jury might find, that the greater price could not be obtained. And we think the complaint sufficient to permit a recovery upon quantum

meruit. The second count, it is true, is lacking in clearness of statement and cannot be regarded as a model pleading; but it purports to set forth a cause of action upon quantum meruit, it states the facts with sufficient particularity, and its allegations are ample, in our judgment, to apprise the defendants of the grounds upon which plaintiff claims the right to recover independent of the original agreement.

Without amplifying the argument, we are constrained to hold that a case was made for submission to the jury, and it follows that the judgment must be reversed, and the cause remanded with instructions to grant a new trial.

Reversed.

---

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes