KINSTON MFG. CO. et al. v. FREEMAN.

(Circuit Court of Appeals, Fourth Circuit. October 5, 1917.)

No. 1520.

1. WORK AND LABOR ⬷30(3)—ACTION BY AGENT FOR COMPENSATION—INSTRUCTIONS.

By a written contract defendants authorized plaintiff to sell timber lands owned by them at a net price to them, plaintiff to receive any excess obtained above such price. Through plaintiff's efforts a person was secured, who took an option on the land at an advanced price; but the option was not exercised, and the contract between the parties expired. Defendants then requested plaintiff's aid in further negotiations with the same person, and through his efforts a sale was made at a lower price. *Held*, in an action to recover for his services on a quantum meruit, that defendants, having availed themselves of the labor done by plaintiff in his prior negotiations with the purchaser, were not entitled to an instruction that anything done by him under the contract should not be considered by the jury.

2. INTEREST ⬷7—RIGHT TO INTEREST—MONEY DUE ON IMPLIED CONTRACTS.

In such case a contract to pay plaintiff reasonable compensation for his services was implied, when they were requested, and on recovery plaintiff was entitled to interest from the time the sale was effected, both by the general law and under Revisal N. C. 1908, § 1954, which provides that money due by contract shall bear interest, which shall be distinguished from the principal in the verdict; and the fact that the jury did not make any finding as to interest, but only the value of plaintiff's services, was a technical omission, which did not deprive him of the right to interest, or the court of the power to include it in the judgment.

Dayton, District Judge, dissenting in part.

In Error to the District Court of the United States for the Eastern District of North Carolina, at New Bern; Henry G. Connor, Judge.

Action by E. B. Freeman against the Kinston Manufacturing Company and the Ellington-Bryant Timber Company. Judgment for plaintiff, and defendants bring error. Affirmed.

For prior opinion, see 233 Fed. 58, 147 C. C. A. 128.

G. V. Cowper, of Kingston, N. C., and O. H. Guion, of New Bern, N. C., for plaintiffs in error.

Walter H. Taylor, of Norfolk, Va., and A. D. Ward, of New Bern, N. C. (E. F. Aydlett, of Elizabeth, N. C., and M. T. Dickinson, of Goldsboro, N. C., on the brief), for defendant in error.

Before KNAPP and WOODS, Circuit Judges, and DAYTON, District Judge.

WOODS, Circuit Judge. The facts appearing in the record and principles of law applicable thereto, on which this court reversed the judgment rendered in favor of defendants on the first trial, are clearly stated in the opinion rendered by Judge Knapp, filed May 13, 1916. 233 Fed. 58, 147 C. C. A. 128. On the second trial the District Judge submitted issues to the jury in accordance with the North Carolina practice, and on the answers made by the jury entered judgment in favor of the plaintiff for $7,500 and interest from the date of the

⬷For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

accrual of the plaintiff's alleged cause of action. The points now made in this court by defendants are: First, that there was an erroneous instruction to the jury; second, that the jury's findings of fact required a judgment for the defendants; and, third, that, even if the plaintiff was entitled to judgment, it should have been for $7,500 with interest only from the first day of the term of the court.

[1] The action was to recover compensation for the alleged procurement by the plaintiff for the defendants of the sale of a large body of timber and a sawmill and lumber and logs in North Carolina. As his first cause of action the plaintiff set up an express written contract with the defendants which allowed him to sell the standing timber and sawmill plant for $350,000 net to the defendants, the plaintiff to receive any excess or overage in the price; negotiation by plaintiff with J. T. Deal, which resulted in the defendants, at plaintiff's instance, giving Deal an option for 60 days at the price of $390,000, of which the plaintiff was to receive $40,000, on the faith of a representation by the defendants that there were 130,000,000 feet of standing timber; a subsequent agreement that if a sale should be made to Deal for a less price, on account of shortage in the timber, the plaintiff's compensation should be $25,000; the failure of Deal to buy at $390,000 because the tract contained only 70,000,000 feet of timber; the subsequent sale to Deal in pursuance of plaintiff's efforts under his contract with the defendants. As a second cause of action, the plaintiff set up as a quantum meruit procurement of the sale by him of the property to Deal for the defendants, for which his services were reasonably worth $40,000. The answer made issues as to these allegations which were thus submitted to the jury and answered:

"1. Did defendants represent to plaintiff at or before the contract set out in Exhibits B and C that there was 130,000,000 feet of timber standing on the lands referred to in said exhibits? Answer. Yes.

"2. Was there 130,000,000 feet of timber standing on said lands? Answer. No.

"3. Did defendants on April 4, 1912, at the time the option to J. T. Deal was signed in Goldsboro, N. C., agree to pay to the plaintiff the sum of $25,000 if, because of shortage in the quantity of the timber on the land, there should be a reduction in the price of the timber? Answer. No.

"4. Did plaintiff, relying on defendants' representation in regard to the number of feet of timber on the land, comply with his part of the contract by securing a purchaser who was able, ready and willing to purchase the properties for $390,000 under the option, provided there was 130,000,000 feet, or approximately that quantity, of standing timber? Answer. No.

"5. Did defendants sell the timber to J. T. Deal for a smaller price than that named in the option solely by reason of the shortage of the timber? Answer. No.

"6. When was the sale of the timber to J. T. Deal made? Answer. June 24, 1912.

"7. Did plaintiff, by his effort, procure the sale of the timber by defendants to J. T. Deal at the price of $307,000? Answer. Yes.

"8. If so, what were plaintiff's services reasonable worth to defendants? Answer. Seven thousand and five hundred dollars."

The defendants first insist that they were entitled to the instruction, asked and refused, that the jury, in considering the seventh issue submitted as to the alleged cause of action on quantum meruit, should dis-

regard all services rendered under the alleged contracts for compensation of $40,000 and $25,000. The argument is this: The option given to Deal at the instance of the plaintiff, under which plaintiff was to receive $40,000, had expired. All the work done by the plaintiff under that option was at his risk that the option would be closed by Deal; and, when Deal refused to exercise the option, the plaintiff could not require defendants to compensate him for labor performed at his own risk in the effort to sell under the option. This labor undertaken by the plaintiff under an express contract at his own risk, and lost by the failure to make the sale under the option, could not be brought over and added to services afterwards performed, even if the plaintiff afterwards procured the sale. This argument might be convincing, but for the fact that, after the option to Deal and the express contract between plaintiff and defendants had expired, the defendants asked the aid of the plaintiff. About a week before the sale was made to Deal by defendants, a meeting was arranged between Deal and the defendants in Richmond. Freeman testified, and Bryant practically admitted, that Freeman was present at this meeting at the request of Bryant, representing the defendants, to aid in the negotiation with Deal. This could only have meant that the defendants to forward the sale to Deal availed themselves of the labor performed and information obtained by Freeman in his former negotiation with Deal. Having thus availed themselves of Freeman's former labor, the defendants were not entitled to the instruction denying plaintiff reasonable compensation for it. Nor does it matter that defendants sold against the protest of the plaintiff, made on the ground that, in his opinion, the land could be sold for a greater price. All this was involved in the question whether the plaintiff procured a purchaser who bought at a price the defendants were willing to take; and this question was answered in the affirmative.

This reasoning and conclusion go far towards disposing of the next position taken by defendants. The jury found in effect that the defendants did incorrectly represent that there was 130,000,000 feet of timber; that Freeman lost nothing by this misrepresentation under his contract with the defendants for $40,000 over their net price of $350,000, because he did not find a purchaser ready, willing, and able to take the property for $390,000 on the basis of the representation. They also found that the defendants did not contract to pay Freeman $25,000 on a sale for less than $350,000 net. The defendants contend that, under the former opinion of this court, the legal sequence from these findings on the alleged express contracts is that Freeman could not recover under the quantum meruit count. True, it was held in the former opinion of this court that if, because of defendants' untrue representation, Freeman was unable to realize the net price of $350,-000, and an overage for himself, he could nevertheless recover if he brought about the sale at a less price. But it was not held that, as a condition precedent to recovery on the quantum meruit, the plaintiff would have to show that he could have realized $350,000 net, but for the untrue representation of the defendants upon which the original contract was based. On the contrary, the court said:

"The second count, it is true, is lacking in clearness of statement and cannot be regarded as a model pleading, but it purports to set forth a cause of action upon quantum meruit, it states the facts with sufficient particularity and its allegations are ample in our judgment to apprise the defendants of the grounds upon which plaintiff claims the right to recover independent of the original agreement."

There was evidence supporting the jury's findings that the sale was procured by Freeman's efforts, and that the plaintiff conferred on the defendants at their request the benefit of all the work he had done in forwarding the sale.

[2] The judgment of the District Court was for $7,500, the amount which the jury found Freeman's services were reasonably worth to the defendants and interest from June 24, 1912, the date of the sale to Deal. The defendants contend that in North Carolina interest is recoverable on an unliquidated demand only from the date of the judgment, and not from the date when the service was rendered. Section 1954, Pell's Revisal 1908, provides:

"All sums of money due by contract of any kind whatsoever, excepting money due on penal bonds, shall bear interest, and when a jury shall render a verdict therefor they shall distinguish the principal from the sum allowed as interest; and the principal sum due on all such contracts shall bear interest from the time of rendering judgment thereon until it be paid and satisfied. In like manner, the amount of any judgment or decree, except the costs, rendered or adjudged in any kind of action, though not on contract, shall bear interest till paid, and the judgment and decree of the court shall be rendered according to this section."

The service rendered by Freeman, which the jury found brought about the sale, having been rendered at the instance of the defendants and accepted by them, there was a contract implied in fact on the part of the defendants to pay for them, as distinguished from express contract, and also from quasi contract, or an obligation imposed by law to pay for benefits received, when no promise could be implied in fact. 9 Cyc. 242; 6 Rul. C. L. 587, 588. The case, therefore, presents an implied contract falling under the statute.

Even where the matter is not regulated by statute, the tendency of modern decisions is to allow interest on all money owing on contracts, either express or implied, from the date it was due, whether the amount be liquidated or unliquidated. 15 Rul. C. L. 8. It is no objection to the application of the rule that the amount due under the contract is unascertained until the trial. The interest is not charged to the debtor as a penalty, but on the principle that, since he has had the use of the money which was justly due to his creditor under the contract, he should pay for the use he is presumed to have made of it from that time. This gives the creditor nothing more than his right, and imposes no hardship on the debtor. The debtor may always escape payment of interest to the creditor by tendering the sum justly due and keeping the tender good. Charlotte Nat. Bank v. Davidson, 70 N. C. 118. The statute of North Carolina was intended to express this modern rule that interest should be allowed on money owing on all contracts from the date when the creditor was entitled to receive it. This, we think, is clearly held in Bond v. Pickett Cotton Mills, 166 N. C. 22, 81 S. E. 936. It is true that interest was not allowed in that

case on a balance which was unascertained until an accounting had been taken. But the refusal to allow interest on a balance which could only be ascertained by an accounting was placed on the express ground that the amount in defendant's hands·was not a debt in the sense intended by the statute, but a trust fund which the defendant had been always ready and willing to pay as soon as the amount should be ascertained, and that therefore no default could be attributed to it. Indeed, the defendant was a mere stakeholder, having no duty of ascertaining the share of the fund in his hands due to each claimant. In the case before us the defendant denied all liability, and the jury found in effect that it owed the plaintiff on an implied contract $7,500 on June 24, 1912. Interest was therefore chargeable under the statute from that date.

The argument that interest cannot be allowed from the time when the money was due, because the jury failed to comply with the requirement that "they shall distinguish the principal from the sum allowed as interest," is rather technical than substantial. The finding that the plaintiff's services were reasonably worth $7,500, without doubt, meant that they were worth that when they were rendered, and that that sum was due to the plaintiff under the implied contract to pay him when his services were completed by the sale. Interest followed from that date as a matter of law; and it was a mere omission of the jury in failing to set it down. Surely, it cannot be necessary to try the whole case over to correct this omission. No more reasonable would it be to impanel another jury and instruct them to do the mechanical act of finding the interest. Looking through and beyond mere technicality, the case is one for emphasis to be placed on the last line of the section of the statute quoted, which requires that "the judgment and decree of the court shall be·rendered according to this section"; that is, that the judgment shall be rendered so as to include interest when the statute clearly requires its allowance.

Affirmed.

DAYTON, District Judge (concurring in part and dissenting in part). I concur in the ruling of this opinion that the pleadings and evidence warranted a judgment by the court below, upon the findings of the jury, in favor of Freeman for $7,500; but I cannot agree that it was authorized to add interest thereto from a date prior to that of the judgment. The North Carolina statute cited, as I understand it, clearly requires, if interest is to be awarded, the amount thereof to be definitely determined and found by the jury, as of the date of verdict, so that the same in the court's judgment may not become part of the principal and interest be thereby compounded. It is not for the court, upon a jury trial, to determine the amount of this interest; the statute expressly requires the jury to find specifically as to it. The right of the court to instruct the jury as to its duty to ascertain and determine specifically the interest, if any, due the plaintiff, was clear, as was also its power to set aside, on motion of the plaintiff, the verdict because the jury erred in not finding interest. Under some circumstances and conditions, where no controversy exists as to the items and dates from which interest is to be calculated, before accepting the

verdict tendered by a jury for the principal sums found, the court might go so far as to send the jury back to determine the interest due; but beyond this, it seems to me, it could not go. In other words, it could not, under this statute, either add to or take away, by its judgment, from the jury finding without substituting a verdict of its own for that of the jury.

It is clear, it seems to me, that in the final analysis of this case it resolves itself into what, under common-law pleading, would be a simple action of assumpsit based alone upon the common count "for work and labor performed at defendant's instance and request." Under the clear and logical rules of that system of pleading, plaintiff would have been required, before trial, to file a specific bill of particulars of these services rendered. The pleadings in this case would seem to indicate that the code practice of the state does not require such bill of particulars, yet the evidence discloses that Freeman's services did not consist of a single act at one specific time, but embraced a number of negotiations and interviews at different times, each involving his time, labor, and probable outlay in the nature of expenses incurred. Such diversity of amounts and dates, universally arising in claims for services rendered, makes clear the obligation of the jury to ascertain the interest sum to be allowed upon the items, and illustrates how impracticable it is for the court to do so by addition to the verdict in its judgment.

It seems to be true that, under the anomalous practice of North Carolina, juries are not required to render formal verdicts, but, in lieu thereof, are subjected to answer numerous interrogatories (liable, it may be suggested in passing, to confuse them in their conclusions so as to render their findings contradictory, as most earnestly has been contended to be so in this case), and upon the answers returned the court renders judgment. For this reason, it may be contended that, because the jury in this case, in answer to one question, said the sale of the timber was made June 24, 1912, and, to another, that Freeman's services were reasonably worth $7,500, the court was justified in assuming that the jury meant the value of the services to relate to the date of sale. In my judgment such conclusion is not justified for these reasons:

First. Because the services were rendered largely at dates prior to the date of sale, and no ascertainment of the interest due therefor is intimated to have been made by the jury as of the date of sale; therefore the isolated finding of the date of sale furnishes no criterion, in the absence of a specific finding to that effect, that the jury intended interest to run from that date. Second. Because the strong presumption naturally arises that, when the question was submitted of what Freeman's services were reasonably worth, in other words, what compensation he was to be allowed by the jury, it assumed the amount to be found to relate to the time of trial and in consequence found a gross sum, including everything due him, as of that date. Third. Under such a practice, with a plain statute before him governing this matter of interest, and setting forth how it should be ascertained by the jury and not by the court, it seems to me very clear that it was the duty of the plaintiff, at the trial, to have such an issue presented

to the jury, among the others, as would have required the jury to determine what interest, if any, he was entitled to, and the specific and separate amount thereof, as the statute required, and, having failed to do this, he could not ask the court, contrary to the statute, to supply the loss, if any, sustained by reason of his own neglect in not asking for such finding on the part of the jury which could alone, under the terms of the statute, make it.

I cannot concur in the view that the objection to the court's action in this regard is technical, inasmuch as the substantial result was that the court, by assuming the sole prerogative of the jury, gave Freeman a judgment for over $9,500, notwithstanding the jury found him entitled to only $7,500. I would therefore modify and reverse the judgment of the court below, so far as it awarded the plaintiff interest on the $7,500 from June 24, 1912, awarding such interest only from the date of the rendition of the verdict, and, as so modified, would affirm it.