## THE ELIZABETH MONROE SMITH.

(Circuit Court of Appeals, Fourth Circuit. April 28, 1919.)

### No. 1710.

1. MARITIME LIENS &65—REPAIRS—EVIDENCE.
   Evidence *held* to sustain a decree establishing a maritime lien for repairs under Act June 23, 1910, § 1 (Comp. St. § 7783).
2. INTEREST &39(1)—MARITIME LIENS—REPAIRS.
   In a suit to establish a maritime lien for repairs, interest is properly allowed from the time the work was finished.

Appeal from the District Court of the United States for the Eastern District of Virginia, at Norfolk; Edmund Waddill, Jr., Judge.

Suit in admiralty by the Norfolk Shipbuilding & Dry Dock Corporation against the steamer Elizabeth Monroe Smith; the Martinez-Butler Navigation Corporation being claimant. Decree for libelant, and claimant appeals. Affirmed.

Edward R. Baird, Jr., of Norfolk, Va. (Wesselman & Kraus, of New York City, on the brief), for appellant.

A. L. Roper and Henry Bowden, both of Norfolk, Va., for appellee.

Before PRITCHARD and WOODS, Circuit Judges, and ROSE, District Judge.

ROSE, District Judge. The appellee, the Norfolk Shipbuilding & Dry Dock Corporation, hereinafter called the repairman, on the 11th

of May, 1918, libeled the steamer Elizabeth Monroe Smith for a repair bill of many items, all set forth in an annexed account and amounting in the aggregate to upwards of $13,600. The appellant, the Martinez-Butler Navigation Corporation, asserting that it was a body corporate of New York, and hereinafter called the owner, appears to have intervened as claimant and owner, and by furnishing a stipulation for the ship procured its release. The case came up for trial below on the 19th of December, more than seven months after the ship had been arrested. It was not until that day that the owner answered, or, so far as it appears, in any way disclosed its defense, and the answer then filed was to the last degree vague. It amounted to little more than a general denial of all the plaintiff's allegations and to a demand for proof of them. The only explanation it gave of why it knew nothing more on the subject was that at the time the repairs were made the ship was on a voyage from New York to South America, and that those in charge of the steamer, who, it was said, could not then be communicated with, were not authorized to contract for the expenditure upon the ship of anything like the sum for which the libel was filed. Who these persons were, or what was their relation to the ship or to its owner, was not disclosed. No explanation was vouchsafed as to how the ship could have been in a repair yard at Norfolk for six weeks without the owner knowing anything about it, if, indeed, the answer is to be understood as implying that the owner did not. It is but rarely that the admiralty sanctions an answer which tells in substance nothing more than would the plea of the general issue to a declaration at common law. In marine cases, whether for tort or contract, the witnesses are so likely to be widely scattered, the expense and difficulty of procuring their testimony is often so great, that the parties should be required by their pleadings to make a showing of the facts in their knowledge, so that the issues may be narrowed to the matters really in dispute.

[1] At the hearing before the learned judge below the owner offered no testimony, and relied there, as it does here, on what amounted to a demurrer to the evidence for the repairman. It asserts that it was not proved that the repairs were ordered by any one having authority so to do. It appears from the testimony of the shipbroker who negotiated the sale of her to the owner that he brought the ship from Philadelphia to the repairman at Norfolk for the purpose of having made to her the repairs recommended by the underwriters, and certain others which the owner itself wanted done, and one of the owner's representatives was on the ground directing the work. In the absence of any countervailing testimony, this was quite enough to entitle the repairman to the benefit of Act June 23, 1910, c. 373, 36 Stat. 604 (Comp. St. § 7783). The owner more seriously stresses what it claims were failures of the repairman to prove that the work and materials charged for were done or furnished. The record shows that various foremen in the employ of the repairman identified bundles of time sheets and requisitions signed by them, or by men under them, and that they had personal knowledge that such labor and materials went into the job. In its assignment of errors the owner asserts that

for many of these items, aggregating more than $4,000, the time sheets or requisitions were not signed at all, or were signed by some people who were not produced as witnesses. It is conclusive to say that the assignment of error is not a part of the record, in such a sense that statements of alleged facts therein can be accepted as true, when the record discloses no other evidence of their truth. It should be added, however, that in this case it would not follow that, because the time sheets or requisition forms were not signed by a witness who was examined, the furnishing of the labor or material has not been sufficiently proved, for the testimony shows that witnesses examined said that they had personal knowledge as to the accuracy of statements appearing on the slips signed by their subordinates. When this testimony was offered, no objection was made to it, if it was open to objection. The prices charged are proved to be those then current in Norfolk.

[2] Interest was properly allowed from the date the work was finished. American Iron Co. v. Seaboard Air Line, 233 U. S. 261, 34 Sup. Ct. 502, 58 L. Ed. 949; Kinston Manufacturing Co. v. Freeman, 247 Fed. 54, 159 C. C. A. 272.

Affirmed.