### BELL v. LAMBORN et al.

(Circuit Court of Appeals, Fourth Circuit. October 23, 1924.)

No. 2209.

**I. Sales ⬤➡354(6)—In action against buyer for breach of contract, answer held to state good affirmative defense.**

Allegations, in the answer in an action against the buyer for breach of contracts for sale of sugar, that defendant was induced to make the contracts by false and fraudulent representations by plaintiff of a world shortage of sugar, and that it was protecting its customers by making equitable allotments between them, whereas in fact, the supply was normal and plaintiff and others in combination were withholding large quantities from the market to create a scarcity, *held* to state a good affirmative defense.

**2. Monopolies ⬤➡23—That plaintiff is party to an illegal combination not a defense to action for goods sold.**

That plaintiff is a party to a combination in restraint of trade, in violation of Anti-Trust Act July 2, 1890 (Comp. St. §§ 8820–8823, 8827–8830), is not a defense to an action by it for goods sold, the remedy provided by the act being exclusive.

**3. Sales ⬤➡48—Violation of Food Conservation Act does not affect validity of contracts for sale of goods.**

That a seller has violated the provisions of Food Control Act Aug. 10, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115⅛e–3115⅛kk, 3115⅛l–3115⅛r), by hoarding or otherwise, does not affect the validity of contracts for sale of goods.

**4. Sales ⬤➡55—Law of state where contract was made and to be performed governs.**

Where a contract of sale between parties in different states, made by offer and acceptance, was accepted and to be performed in one of the states, the law of that state governs as to the measure of damages for breach.

**5. Sales ⬤➡333 — Buyer refusing to accept goods entitled to notice that they will be sold for his account.**

Under the law of Georgia, where merchandise which a buyer has refused to accept under his contract is sold by the other party, he is required to give the buyer notice of such sale, though not necessarily of the time and place where the goods are offered in the open market.

**6. Sales ⬤➡332—That commodity sold was not segregated does not affect seller's right to resell on breach of contract.**

That the subject-matter of a contract of sale was a commodity not segregated from a mass in store does not affect the right of the seller to resell the same quantity from the mass for the buyer's account on his breach of the contract.

**7. Sales ⬤➡332—Seller may resell on breach, though contract is executory.**

That a contract of sale is executory does not affect the right of the seller to resell on repudiation of the contract by the buyer.

**8. Sales ⬤➡384(7) — Interest recoverable on damages for breach of contract of sale.**

Under the law of Georgia (Civ. Code 1910, § 3434), interest is recoverable on damages recovered for breach of a contract of sale by the buyer from the time the amount of damages became fixed by a resale.

In Error to the District Court of the United States for the Western District of South Carolina, at Greenville; Henry H. Watkins, Judge.

Action at law by A. H. Lamborn and others, trading as Lamborn & Co., against J. W. Bell. Judgment for plaintiffs, and defendant brings error. Reversed.

J. Hertz Brown, of Spartanburg, S. C. (Carlisle & Carlisle, of Spartanburg, S. C., on the brief), for plaintiff in error.

A. B. Lovett, of Savannah, Ga. (Lyles, Daniel & Drummond, of Spartanburg, S. C., Hitch, Denmark & Lovett, of Savannah, Ga., and C. E. Daniel, of Spartanburg, S. C., on the brief), for defendants in error.

Before WOODS, WADDILL, and ROSE, Circuit Judges.

WOODS, Circuit Judge. Defendant Bell, doing business in Spartanburg, S. C., in response to quotations from plaintiffs, Lamborn & Co., wired them to "book" certain quantities of sugar for him. Lamborn & Co. accepted the orders, and sent forward contracts signed by themselves for Bell to execute and return. These contracts dated April 2, April 5, and June 4, 1920, were signed and returned by Bell. He refused to accept the sugar when tendered. Plaintiffs then resold at a loss of $21,570.26, and brought this action to recover that amount and interest.

The District Judge sustained a demurrer to the affirmative defenses alleging the invalidity of the contracts. In response to motions of both sides for a directed verdict, the jury was instructed to find for plaintiff the whole amount claimed. The facts will sufficiently appear in the discussion of the errors assigned.

[1] The defense of fraud alleged against the plaintiffs is difficult to analyze, because it is stated in long and involved sentences; one of them being 2½ pages in length. As we understand, the defendant means to allege that he was deceived into making the contracts sued on by the fraud of the plaintiffs acting in concert with Savannah Sugar Refining Company and other brokers and refiners. As alleged by the defendant, the fraudulent scheme was carried out in this way: The plaintiffs and others acting with them knew that the defendant and other individual dealers in sugar in like situation were unable to obtain and analyze information concerning the world's supply of sugar without prohibitive expense, and that they relied on plaintiffs for expert information and advice concerning the supply and movement of sugar and the trend of the market. The plaintiff under these conditions by letters and circulars falsely and fraudulently represented to the defendant and all dealers in the southeast "that it was practically impossible to obtain a supply of raw sugar in the world market, that there were fre-

quent times at which no sugar at all was available for distribution by them, that there were frequent times at which it was impossible for them to secure more than a limited amount of sugar, that there were frequent times and long intervals during which the Savannah Sugar Refining Company had entirely withdrawn from the refined sugar market and had oversold its output and was neither taking orders nor able to supply sugar for immediate delivery." The plaintiffs further represented to defendant that they were brokers for Savannah Sugar Refining Company and as such were alloting and would continue to allot available sugar to the trade "in accordance with the plan put in operation by the President of the United States during the war with Germany." This allotment plan the plaintiffs represented was the only equitable way of distributing sugar under the conditions alleged to exist.

At the time these statements were made by plaintiffs the world's supply of sugar was normal, and plaintiffs could procure it through the ordinary channels of trade; sugar was being imported into the United States and received by the plaintiffs in normal and reasonable quantities; the Savannah Sugar Refining Company had ample stocks on hand for distribution to the trade; the plaintiffs and Savannah Sugar Refining Company had abandoned the allotment method of distributing sugar at a time when they were representing that it was the only fair and equitable way of distributing. In conjunction with these false representations of the actual scarcity of sugar and as a part of the fraudulent scheme, the plaintiffs and the Savannah Sugar Refining Company collected and withdrew from the market such large quantities of sugar as to bring about a sugar famine. The defendant avers that all this was done and defendant was induced to make the contracts sued on by the false representations set out, at a time when plaintiffs were falsely assuring defendant that they were looking after his interest and keeping him informed as to the supply and movement of sugar and to protect defendant.

We are unable to agree with the District Judge that these allegations of fraud, if true, constitute no defense. One may be adjudged guilty of fraud when he falsely expresses his opinion knowing that the facts are not what the opinion implies they are, and the other party is known to rely on the opinion. Authorities cited in note 35 L. R. A. 425; 12 R. C. L. 248; Pomeroy's

Equity Jurisprudence (4th Ed.) §§ 878, 904, 956. The defendant's allegations here are not confined to such opinions expressed by the plaintiffs. The averment is that although plaintiffs knew the defendant was relying on them for information as to the supply of sugar and the sugar market, they knowingly made to the defendant the false statement that there was a great scarcity of sugar and that it was practically impossible to obtain a supply of this necessary article of commerce. Added to this is the allegation that at the very time the plaintiffs were deceiving the defendant by these false statements of the supply of sugar into making the contracts sued on, they themselves in combination with others had accumulated great stores of sugar which enabled them to greatly increase the price. The defense of fraud stated in the answer is thus shown to be very different from expressions of opinion as to future market prices or other matters depending on unknown contingencies as in Gordon v. Butler, 105 U. S. 553, 26 L. Ed. 1166; Southern Development Co. v. Silva, 125 U. S. 247, 8 S. Ct. 881, 31 L. Ed. 678; Green v. Societe Anonyme, etc. (C. C.) 81 F. 64; W. H. Goff. Co. v. Lamborn & Co. (C. C. A.) 281 F. 613. It is also very different from the vague allegations chiefly legal conclusions, set out in Franklin Sugar Refining Co. v. Hanscom Brothers, 273 Pa. 98, 116 A. 140. In W. H. Goff Co. v. Lamborn & Co. (C. C. A.) 281 F. 613, relied on by plaintiffs' counsel, the allegation of fraud held to be insufficient does not appear. The demurrer to the defense of fraudulent procurement of the contracts should have been overruled.

[2] The defense that in violation of the Sherman Act (Comp. St. §§ 8820–8823, 8827–8830) the plaintiff in association with others created a monopoly or trust in sugar is not available to the defendant to defeat the recovery of the purchase price of goods. The remedy provided by the Anti-Trust Act of 1890 is exclusive. Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 22 S. Ct. 431, 46 L. Ed. 679; D. R. Wilder Mfg. Co. v. Corn Products Refining Co., 236 U. S. 165, 35 S. Ct. 398, 59 L. Ed. 520, Ann. Cas. 1916A, 118; Geddes et al. v. Anaconda Copper Mining Co., 254 U. S. 590, 41 S. Ct. 209, 65 L. Ed. 425. In Continental Wall Paper Co. v. Louis Voight & Sons Co., 212 U. S. 227, 260, 29 S. Ct. 280, 53 L. Ed. 486, it was held that the seller could not recover because both buyer and seller were parties to an illegal conspiracy to put all wall paper into a trust forbidden by law,

and both made the contract of sale sued on in the execution and maintenance of the conspiracy. In such case the law will leave the parties where it found them. The view of the Supreme Court was that participation by both parties in the illegal agreement in furtherance of which the contract sued on was made distinguishes the case from Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 22 S. Ct. 431, 46 L. Ed. 679, and other like cases. In the case before us the defendant was not a participant in the illegal combination and his purchases were not in furtherance of it. Therefore, his contract unless invalid for some other reason must stand.

[3] The defense that the plaintiffs cannot recover because they violated the provisions of the Food Control Act, 40 Stat. 276 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115⅛e–3115⅛kk, 3115⅛l–3115⅛r), falls under the same rule and is controlled by the same authorities. There is no provision in the statute making invalid sales because made at unreasonable or excessive prices, or because made without the required license. The act provides:

"Whenever the President shall find that any storage charge, commission, profit, or practice of any licensee is unjust, or unreasonable, or discriminatory and unfair, or wasteful, and shall order such licensee, within a reasonable time fixed in the order, to discontinue the same, unless such order, which shall recite the facts found, is revoked or suspended, such licensee shall, within the time prescribed in the order, discontinue such unjust, unreasonable, discriminatory and unfair storage charge, commission, profit, or practice. The President may, in lieu of any such unjust, unreasonable, discriminatory, and unfair storage charge, commission, profit, or practice, find what is a just, reasonable, nondiscriminatory and fair storage charge, commission, profit, or practice, and in any proceeding brought in any court such order of the President shall be prima facie evidence."

The act provides a penalty for doing business without a license or refusal or failure "to discontinue any unjust, unreasonable, discriminatory and unfair storage charge, commission, profit, or practice" in accordance with the President's order under this section. These regulations, remedies, and punishments are exclusive, and the courts have no power to attach the additional remedy and regulation of the loss of the price of the goods sold.

[4] The District Judge correctly held the

measure of damages governed by the law of Georgia. The contract for the sale of the sugar was made by a telegraphic offer sent by the defendant in Spartanburg, S. C., and a telegraphic acceptance sent by plaintiffs from Savannah, Ga. The place of acceptance was the place of the making of the contract. Williston on Contracts, vol. 1, § 97. It is true that a formal written instrument expressing the details of the sale was completed by the signature and mailing in South Carolina; but a binding contract of sale had already been made in Savannah. The place of delivery was supplied by the formal contract as Port Wentworth, Ga., and that was the place of performance. The law of Georgia as to the measure of damages was therefore applicable. New England Oil Corporation v. Island Oil Marketing Corporation (C. C. A.) 288 F. 961, and authorities cited; Home Land & Cattle Co. v. McNamara, 145 F. 17, 76 C. C. A. 47; Berlet v. Lehigh Valley Silk Mills (C. C. A.) 287 F. 769.

[5] The law of Georgia required plaintiffs to give defendant notice of the sale, not necessarily of the time and place. Notice which gave the defendant an opportunity to protect his interest and prevent a sacrifice of the property was sufficient. Green v. Ansley, 92 Ga. 647, 19 S. E. 53; 44 Am. St. Rep. 110; Davis Sulphur-Ore Co. v. Atlanta Guano Co., 109 Ga. 609, 34 S. E. 1011, 1012. The correspondence indicates diligent effort to get the best price for the sugar, and the defendant has nothing to complain of in that respect. The statute does not require sale at auction, and it is manifest when one is trying the market for the best price it would be impossible to hold open an offer to give a defaulting purchaser notice of the time and place of sale.

On October 16, 1920, plaintiffs received an offer of eleven cents a pound for sugar. They then wired the defendant that they would accept the offer unless defendant furnished a better offer by 10 o'clock on October 16, 1920. The sufficiency of the notice as to time might have been properly left to the jury but for the fact that defendant wrote immediately on receipt of the notice that he had no interest in the sugar. Having thus made clearly known that he would take no measures to protect his interest, he is not in a position to complain that the notice was inadequate.

[6] Modern methods of business forbid any distinction as to the right of resale at the risk of the purchaser between goods segregated and goods sold from a mass in a warehouse or elevator or a refinery. We adopt the statement of the editor in note 26 L. R. A. (N. S.) 73:

"Notwithstanding the great array of cases to the contrary, it is now the best legal opinion, at least, in the United States, that in these days of grain elevators and oil tanks, where pipe line certificates and warehouse receipts pass from hand to hand in daily business transactions, sales of grain by the bushel and oil by the gallon, out of elevators and tanks, pass the property to the buyer without any separation of the masses."

Certainly the contracts of sale between the plaintiffs and the defendant contemplating actual delivery were good although sugar therein mentioned had not been segregated. At the time of the resale it had been actually separated. The resale was therefore valid to charge the defendant with the difference between the contract price and the price obtained at the resale.

[7] It makes no difference that the contracts of sale were executory. Robson & Evans v. J. R. Hale & Sons, 139 Ga. 753, 78 S. E. 177; Gilbert Grocery Co. v. Howell (C. C. A.) 289 F. 474; Williston on Sales, § 546, and authorities cited.

[8] Interest was recoverable under the law of Georgia from the date the amount of damages became fixed by the resale (Georgia Code, § 3434), and under the law of South Carolina (Woods v. Cramer, 34 S. C. 518, 13 S. E. 660; Walker v. Southern Railway, 76 S. C. 308, 313, 56 S. E. 952). The federal rule is to allow interest on such demands in the absence of statutory regulation. Kingston Mfg. Co. v. Freeman, 247 F. 54, 159 C. C. A. 272; Second National Bank v. Columbia Trust Co. (C. C. A.) 288 F. 17, 30 A. L. R. 1299.

The judgment is reversed for error in sustaining the demurrer to the defense of fraud.

Reversed.