## AMERICAN REFINING CO. v. GASOLINE PRODUCTS CO. (No. 11670.)*

Court of Civil Appeals of Texas. Fort Worth. Feb. 5, 1927.

Rehearing Denied March 12, 1927.

1. Monopolies ⊙⟹23—Licensee of patented processes cannot refuse payment of royalties because licensor belongs to illegal combination (Sherman Anti-Trust Act [U. S. Comp. St. § 8820 et seq.]).

Licensee of patented processes for cracking crude oil under a license contract not inherently illegal cannot defend suit by the licensor for royalties on ground that licensor and other companies, by contract relating to the processes, are members of combination which violates the Sherman Anti-Trust Act (U. S. Comp. St. § 8820 et seq.).

2. Monopolies ⊙⟹23—Remedies under Anti-Trust Act do not include suit in state court for relief to third person on independent contract not inherently unlawful (U. S. Comp. St. § 8820 et seq.).

Remedies provided for by the Anti-Trust Act (U. S. Comp. St. § 8820 et seq.) do not include a suit in a state court for relief from obligations specified in an independent contract, entered into by one not a party to the invalid combination, and not inherently violative of the anti-trust statutes.

3. Monopolies ⊙⟹23—Lessee of patented process by independent contract may not impose forfeitures on lessor because of latter's participation in illegal combination.

A lessee, not a party to a combination invalid under the anti-trust statutes, may not impose on the lessor, who is a party thereto, the penalty of forfeiture of accrued fruits of the obligation on the ground of the combination's invalidity.

4. Monopolies ⊙⟹14—Contract granting license to use oil-refining processes held not inherently invalid as essential in combination in restraint of trade.

Contract by which holder of patent rights licensed a refining company to use processes, limiting amount of oil to be refined, requiring assignment to licensor of improvements on processes during contract, and fixing royalty of 10 cents per barrel, held not inherently invalid as an essential in a chain of proceedings by a combination in restraint of trade.

5. Contracts ⊙⟹138(1)—Contract inherently invalid will not be enforced, regardless of anti-trust laws.

A contract inherently invalid will not be enforced, regardless of its relation to a combination illegal under the anti-trust laws.

6. Patents ⊙⟹219(4)—In suit for royalties, licensee's answer that licensor was charged in another suit as member of illegal combination held hearsay.

In suit for royalties, the licensee's allegation in answer that licensor had been charged in an-

other suit with being a member of a combination, in violation of anti-trust laws was hearsay, and could not fix that status upon the licensor.

**7. Monopolies ⚖══14—Enforcement of process license contract held not directly to affect interstate commerce or create monopoly.**

Enforcement of contract between holder of oil-refining patent rights and licensee of processes *held* not directly to affect interstate commerce or create monopoly by contract.

**8. Patents ⚖══185—Patent owner has authorized monopoly.**

Owner of processes patented by the national government is thereby given a monopoly not subject to attack on ground that he, in its exercise, or one by him authorized, is acting to disadvantage of others not so privileged.

**9. Courts ⚖══489(8)—Relief from unlawful combination affecting interstate trade must be sought in federal courts under Anti-Trust Acts.**

Relief from injurious consequences to the public, brought about by alleged combination affecting interstate trade, must be sought in federal courts under the anti-trust statutes.

**10. Monopolies ⚖══23—Subsidiary agreement with third person, to be tainted with illegality of monopolistic agreement, must directly promote unlawful purposes.**

To taint a subsidiary agreement between a third person and a member of a monopolistic combination with the fraud or illegality of the combination agreement, enforcement of the subsidiary agreement must directly promote the unlawful purposes of the other.

**11. Patents ⚖══209(1)—License contract, terminable by licensee, was not invalid for requiring assignment to licensor of improvements in processes.**

Contract, granting license to use patented oil-refining processes, and providing for termination by licensee on 60 days' notice, was not invalid by reason of provision that improvements designed or obtained by licensee during contract should be property of licensor.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Action by the Gasoline Products Company against the American Refining Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Weeks, Morrow, Francis & Hankerson, of Wichita Falls, for appellant.

Hunt C. Moore, of Kansas City, Mo., and J. T. Montgomery, of Wichita Falls, for appellee.

CONNER, C. J. The appellee, Gasoline Products Company, a foreign corporation, sued the appellant, American Refining Company, in the district court of Wichita county to recover the sum of about $30,000, the aggregate amount of stated payments alleged to have matured and become due during a series of months beginning about June 1, 1923, and ending about December 10, 1923, on account of rents or royalties accruing under a contract issued to the appellant by the appellee as the licensor of certain patented processes involved in what is designated as cracking crude oil in the production of gasoline.

The appellant filed a lengthy answer, consisting of demurrers and a general denial and a special defense, attempting to show that appellee and appellant were conspirators against the Sherman Anti-Trust Act of the United States (U. S. Comp. St. § 8820 et seq.), and that the contract on which appellee sued was a link in the chain of preconceived proceedings intended as aids in the accomplishment of the conspiracy, and that hence the court should deny the enforcement of the contract declared upon.

The appellee urged certain special exceptions in the nature of general demurrers to the special answer above indicated, which were sustained by the court, and, the appellant having declined to amend, the case proceeded to trial upon the plaintiff's pleadings and the general denial on the part of appellant. Appellee introduced its contract, proof of the use of the cracking process by appellant, proof of the number of barrels run upon which royalties accrued, and proof of the termination of the license contract, as a result of which the court entered a judgment in the sum of $32,582.28, besides interest and costs. From this judgment the appellant company has duly prosecuted the present appeal.

There is no controversy over the facts, and the judgment below must be affirmed, unless the special answer of appellant above referred to, tested under rules applied in cases of a general demurrer, constitutes a defense to appellee's action.

Appellant was what is termed a refiner engaged in producing and selling gasoline from crude oil, and the contract declared upon is dated April 4, 1923, and opens with recitals that the licensor, appellee, is the owner of, or has the right to grant licenses under certain enumerated letters patent of the United States relating to processes for treating hydrocarbons and the products derived therefrom and apparatus used in connection therewith, and further recites that it is empowered to grant the limited nonexclusive license therein granted under certain enumerated patents, patent applications, and inventions therein specified or thereafter to be acquired, pertaining to the cracking of oil under pressure. The patents mentioned in the contract were designated as patents issued to "W. M. Cross and R. Cross" on several specified dates extending from October 31, 1916, to November 28, 1922, a series of patents owned by the Texas Company, issued to various individuals on several specified dates extending from October 28, 1919, to November 28,

1922, and patents owned by the Standard Oil Company of New Jersey to various individuals at several specified dates extending from September 28, 1919, to October 28, 1922, and patents owned by the Standard Oil Company of Indiana issued to various individuals at several specified dates extending from April 12, 1910, to October 4, 1921.

Article first contains a grant to appellant of a nonexclusive license to construct and operate at a plant or plants owned or controlled by appellant with the United States (except a small area in Ohio and Kentucky) an installation or installations for cracking petroleum oil by the process described in general terms. It is provided that the right of the appellant shall be limited to the treatment of a maximun amount of oil, including recycled oil, of 30,000 barrels of 42 gallons each per day. In article second, appellant (licensee) agrees to construct two units at its plant at Wichita Falls, Tex., and agrees that the installations shall be erected only in conformity with the plans and specifications prepared and furnished free of charge, or approved in writing by licensor or its representative. Article third provides that the appellant shall pay to appellee as a throughout royalty for the rights granted a sum of 10 cents per barrel of 42 gallons each, or in the alternative .833 of one cent per gallon for every gallon of gasoline made available by the process. Articles fourth, fifth, and sixth provide for the mechanics of computing and paying royalties. Article seventh provides that, in the event infringement suits are brought against appellant, appellee will assume the defense thereof, and pay any recovery had through final judgment in suits commenced within two years from the date of the agreement. Article eighth reads as follows:

"Any and all improvements on any of the patents, applications, inventions, or processes hereinbefore referred to, designed, or otherwise obtained by the licensee, during the continuation of this agreement shall be the property of the licensor and duly assigned by the licensee to the licensor, and the licensee will execute and deliver to the licensor, upon its written demand, any and all papers necessary or proper to vest title to any of such improvements in the licensor. Upon the termination of this agreement, the licensee shall have the shop right to use, but not to assign, any of said improvements, except as otherwise specifically provided herein; it being expressly understood and agreed that, upon and after the termination of this agreement, the licensee shall have no right to use any of the patents, patent rights, processes, inventions, and applications hereinbefore described, or any part thereof, or improvements by others than licensee, in connection with such improvements of the licensee or otherwise."

Articles ninth, tenth, and eleventh contain the ordinary provisions against assignment of the license without the licensor's consent, forbidding the license to contest the validity of the patents under which it is licensed, and providing for the license remaining in force for the full term of the patents, unless sooner terminated. Article twelfth makes available to the licensee the benefit of any reduction of royalties granted by the licensor to other licensees. Article thirteenth contains definitions. Article fourteenth contains the usual termination clause permitting the licensee to terminate the contract by giving 60 days' written notice. Article fifteenth gives the addresses of the parties. Articles sixteenth and seventeenth deal with the rights of successors and assigns of the parties under the contract.

As before indicated, the appellant company must admit the making of this contract and the enjoyment of the rights granted thereunder, and that royalties in the amount for which judgment was rendered accrued in accordance with its terms.

Appellant's special plea, attacking this contract as invalid and to which the court sustained the demurrers, covers some thirteen pages of the transcript, and is too lengthy for full insertion here. In substance, however, it is to the effect that appellant, in entering into the contract declared upon by the appellee, acted in good faith, but that subsequently a suit had been instituted in a federal court in Illinois, to which appellant and appellee were made parties, charging a conspiracy between appellee, the Texas Company, the Standard Oil Company of Indiana, and the Standard Oil Company of New Jersey, in violation of the anti-trust statutes of the United States, and that the contract involved in this suit constituted a link in the chain of proceedings which were intended and had the effect to create a monopoly and to restrain interstate commerce. As alleged in the special plea, the appellee, the Texas Company, and the Standard Oil Companies mentioned were each owners of patented processes of what is termed "cracking" crude oil, whereby increased quantities of gasoline was obtained, and that appellee and said oil companies had entered into agreements which in terms authorized each of the parties to lease to and invest in other persons, corporations, and associations the rights conferred by the patents referred to. It is charged that said agreements exempted from their operation a restricted territory in Indiana and Ohio, relieving the parties thereto from the payment of royalties or fees for the use of said processes, and authorizing the acquisition of any and all improvements made by or in behalf of licensees during the use of the patented processes. It is alleged that these provisions, and others not thought to be necessary to mention, were intended and had the effect to give the parties to the combination an unfair advantage over independent refiners of crude oil, to restrict competition among patentees, to impose excessive rentals or fees for the use of the processes, and to

stifle the independent inventive genius of the country, and thereby, by contract, unlawfully enlarge the monopolies conferred by the patents.

The contention that the agreements between appellee and the oil companies named, together with other facts alleged, constitute a violation of the anti-trust laws of the United States, is supported by a wealth of argument, illustrations, and citation of authority, by the able counsel of appellant. Among the cases cited in this connection are the following: U. S. v. MacAndrews & Forbes Co. (C. C.) 149 F. 838; Motion Picture Machine Case, 243 U. S. 502, 37 S. Ct. 416, 61 L. Ed. 871, L. R. A. 1917E, 1187, Ann. Cas. 1918A, 959; United Shoe Machinery Corp. v. U. S., 258 U. S. 451, 42 S. Ct. 363, 66 L. Ed. 708; United Shoe Machinery Co. v. La Chappelle, 212 Mass. 467, 99 N. E. 289, Ann. Cas. 1913D, 715; U. S. v. New Department Mfg. Co. (D. C.) 204 F. 113; Blount Mfg. Co. v. Yale & Towne Mfg. Co. (C. C.) 166 F. 557; U. S. v. Winslow, 227 U. S. 217, 33 S. Ct. 253, 57 L. Ed. 485; Aikens v. Wisconsin, 195 U. S. 194, 25 S. Ct. 3, 49 L. Ed. 154; Swift & Co. v. U. S., 196 U. S. 375, 25 S. Ct. 276, 49 L. Ed. 518; United Leatherworkers International Union v. Herkert & M. Trunk Co., 265 U. S. 468, 44 S. Ct. 623, 68 L. Ed. 1108, 33 A. L. R. 566; U. S. v. Reading Co., 226 U. S. 324, 33 S. Ct. 90, 57 L. Ed. 243; U. S. v. Motion Picture Patents Co. (D. C.) 225 F. 800; Corsicana National Bank v. Johnson, 251 U. S. 68, 40 S. Ct. 82, 64 L. Ed. 147; Grandprey v. Bennett, 41 S. D. 619, 172 N. W. 514.

In behalf of appellee, it is insisted that the agreements, as alleged, between appellee and the oil companies named, do not relate to or constitute interstate or foreign commerce within the meaning of the terms of the anti-trust laws of United States, and, hence not subject to the inhibition of those laws or otherwise unlawful, citing the following cases in support of these contentions, to wit, U. S. v. E. C. Knight Co., 156 U. S. 1, 15 S. Ct. 249, 39 L. Ed. 325; Northwestern Mutual Life Ins. Co. v. Wisconsin, 247 U. S. 132, 38 S. Ct. 444, 62 L. Ed. 1025; Blumenstock Bros. v. Curtis Publishing Co., 252 U. S. 436, 40 S. Ct. 385, 64 L. Ed. 649; Crescent Cotton Oil Co. v. Mississippi, 257 U. S. 129, 42 S. Ct. 42, 66 L. Ed. 166; Hammer v. Dagenhart, 247 U. S. 251, 38 S. Ct. 529, 62 L. Ed. 1101, 3 A. L. R. 649, Ann. Cas. 1918E, 724; Maynard Coal Co. v. Federal Trade Commission, Sup. Ct. Dist. of Col., decided Apr. 19, 1926.

We will not undertake to trace the history of the subject as shown in the statutes and decisions invoked, nor point out distinctions observable in the cases cited, nor to decide the question of whether the agreements between appellee and the oil companies named violate said anti-trust statutes. While it is perhaps not altogether clear, under the circumstances stated in the defensive plea, that such is the case, yet we think it unnecessary to our final conclusion for reasons hereinafter appearing.

[1] It is apparent on the face of the pleadings that the contract that appellee is seeking to enforce is not the contract between appellee and the oil companies. The one in controversy is evidently collateral to the contract alleged to be in violation of the anti-trust statutes, and it is abundantly established that it is no defense to a suit on a contract between a party to a combination, such as alleged, and a third party, unless the contract sued on is inherently illegal, and that with the exception stated the remedies provided by the anti-trust laws are exclusive of all others.

The case of Small Co. v. Lamborn & Co., 267 U. S. 248, 45 S. Ct. 300, 69 L. Ed. 597, was one in which the parties had entered into contracts for sale by one and purchase by the other of 450 barrels of refined sugar, to be shipped by the seller from a refinery in Port Wentworth, Ga., to the buyer at Macon, in the same state, between July 15th and October 1st. Late in July 150 barrels were shipped, accepted, and paid for. Later the buyer refused to further comply with the contract, and the seller instituted a suit to recover from the buyer the difference between the contract price and the amount obtained on the resale. In answer to the action, the buyer, among other things, set up a special defense, based on the Anti-Trust Act of July 2, 1890, c. 647, 26 Stat. at L. 209 (Comp. Stat. § 8820; 9 Fed. Stat. Anno. [2d Ed.] p. 678), prohibiting restraints and monopolies in interstate and foreign commerce. A demurrer to the defense was sustained, and the ruling was assigned as error. In disposing of the question, the Supreme Court, after having held that the contracts alleged to be invalid under the anti-trust statutes pertained only to intrastate commerce, further said that:

"Independently of the character of commerce involved, it was not shown that the contracts were in themselves invalid under the Anti-Trust Act, but only that they were collateral to a combination prohibited by it. In substance, the defense was that the seller and others had entered into a combination to manipulate interstate trade in refined sugar with a view to increasing the price, that the contracts were made during the life of the combination, and that the seller conformed the terms of sale to standards sanctioned by the combination. There was no allegation that it was not the owner of the sugar; nor any allegation that the buyer was a party to the combination, or other than a stranger to it. The contracts disclosed the full transaction between the seller and buyer and contemplated that the sale should pass the title without any restriction on the right of the buyer to resell as it might choose. As has been pointed out in prior cases, there is nothing in the Anti-Trust Act which invalidates such a collateral contract or relieves the buyer from his obligation under it. Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 550–552, 22 S. Ct. 431, 46 L. Ed. 679, 686, 687; Continental Wall Paper Co. v. Voight, 212

U. S. 227, 257–259, 29 S. Ct. 280, 53 L. Ed. 486, 503, 504; D. R. Wilder Mfg. Co. v. Corn Products Ref. Co., 236 U. S. 165, 177, 35 S. Ct. 398, 59 L. Ed. 520, 527, Ann. Cas. 1916A, 118. It is only where the invalidity is inherent in the contract that the act may be interposed as a defense. With that exception the remedies which the act provides for violations of it are exclusive. D. R. Wilder Mfg. Co. v. Corn Products Ref. Co., 236 U. S. 172, 175, 35 S. Ct. 398, 59 L. Ed. 525, 526, Ann. Cas. 1916A, 118; Paine Lumber Co. v. Neal, 244 U. S. 459, 471, 37 S. Ct. 718, 61 L. Ed. 1256, 1264; Geddes v. Anaconda Min. Co., 254 U. S. 590, 593, 41 S. Ct. 209, 65 L. Ed. 425, 429.

In addition to the cases cited by the Supreme Court in the above quotation, we also cite Geddes v. Anaconda Mining Co., 254 U. S. 590, 41 S. Ct. 209, 65 L. Ed. 430; General Electric Co. v. Minneapolis Electric Co. (D. C.) 10 F.(2d) 851, appeal dismissed Id. (C. C. A.) 7 F.(2d) 1020; Bell v. Lanborn (C. C. A.) 2 F.(2d) 205, 207.

An examination of the Anti-Trust Act discloses that the only remedies or penalties provided for in that act, which, under the decisions cited, are to be enforced in the federal courts, are substantially as follows:

"First. The declaration that a violation of the act is a misdemeanor and punishable by fine and imprisonment.

"Second. The act gives the United States Circuit Court the power to prevent and restrain violations of the act.

"Third. The act provides for the forfeiture of property under certain circumstances.

"Fourth. The act provides for the recovery of triple damages by persons injured by means of suits to be brought only in the Circuit Court of the United States, in the district in which the defendant resides or is found."

[2, 3] It is evident that these provisions do not include the remedy of a suit in a state court for relief from obligations specified in an independent contract entered into by one not a party to the invalid combination and not inherently violative of the anti-trust statutes. Such a contractor may not thus impose on the contractee the penalty of forfeiture of accrued fruits of the obligation. Hence the vital question in this case necessary, as we think, for determination, is the question of whether the contract declared upon by the appellee is inherently invalid, on the grounds alleged in appellant's special answer.

[4] It is vigorously insisted in behalf of appellant that the contract declared upon is inherently invalid, in that it is a link in the chain of proceedings designed to and having the effect of serving the object and purposes of the illegal combination, and, being thus tainted, is unenforceable. In support of this contention the following provisions of the contract in question are more particularly urged, to wit:

"A. The provision limiting the amount of oil that could be refined to 30,000 barrels per day.

"B. The provision requiring the assignment of improvements.

"C. The provision fixing the royalty at 10 cents per barrel, which it is claimed is excessive."

Many authorities are cited in appellant's brief, as supporting its contention. We cannot discuss them all without unduly extending this opinion, but will direct particular attention to the cases of Continental Wall Paper Co. v. Voight, 212 U. S. 227, 29 S. Ct. 280, 53 L. Ed. 486, by the Supreme Court of the United States, and United Shoe Co. v. La Chappelle, 212 Mass. 467, 99 N. E. 289, Ann. Cas. 1913D, 715, by the Massachusetts Supreme Court, which are perhaps most clearly in point, and which appear to be most insistently relied upon in behalf of appellant. The case of Continental Wall Paper Co. v. Voight is one in which the former sued the latter to recover a balance of $56,762.10, alleged to be due on an account for wall paper sold and delivered to the defendant. The defendant there, as here, defended by special plea, to the effect that plaintiff, together with numerous other corporations, firms, etc., had entered into a combination in restraint of trade and in violation of the United States anti-trust laws. The contract alleged to be so invalid is complicated and lengthy, and which we think unnecessary to here set out. It may be found, however, by reference to the opinion of the Circuit Court of Appeals for the Sixth District, reported in 148 F. 939, 19 L. R. A. (N. S.) 143, and also in the report of the decision of the Supreme Court of the United States in 212 U. S. 227, 29 S. Ct. 280, 53 L. Ed. 486. If we have properly interpreted the decision of the court referred to, we think the case is distinguishable from that of the one now before us. In that case it appears that both plaintiff and defendant were parties to the contract declared to be invalid on the grounds alleged, and the recovery sought was founded upon obligations specified in the contract so declared to be illegal.

The case of United Shoe Machinery Co. v. La Chappelle, 212 Mass. 467, 99 N. E. 289, Ann. Cas. 1913D, 715, by the Supreme Court of Massachusetts, is one in which both litigants were parties to a contract held to be in direct aid of a monopoly. It appears that La Chappelle had been employed by the machinery company, and among other provisions in the contract was one which bound the defendant to assign to the plaintiff any and all inventions, improvements, and patents which he should make during the continuance of the contract and for ten years thereafter and for a like period not to engage in a similar business. The employment under the contract continued from 1906, with a brief interruption, until 1909, when it ceased, after which the defendant took out a patent for some improvement in shoe machinery which he refused to assign to the plaintiff, and the plaintiff thereupon instituted suit to compel

such assignment. The court held the contract invalid, on the ground, substantially, that the machinery company could not thus lawfully extend the monopoly created by patents owned by the company, and refused to sustain the prayer of the plaintiff company for a specific performance of the provision referred to. Among other things, the court said:

"The contract between the plaintiff and defendant did not relate primarily to interstate commerce. It was for labor and skill alone. It had nothing to do with the transportation of goods. But, taking the averments of the answer and the proffered evidence to be true, as we are bound to do on this record, it was made by one who had a monopoly of * * * skill in that department; it was a necessary link in a chain of contracts essential to the maintenance and preservation of monopoly in interstate trade which had been established by the plaintiff. Such a case is within the principle announced in Continental Wall Paper Co. v. Voight & Sons Co., 212 U. S. 227, 261, 29 S. Ct. 280, 53 L. Ed. 486, that the plaintiff comes into a court of equity for aid in enforcing a contract which according to the allegation and offer of proof was intended to be and was in fact an essential part of an illegal scheme."

The court, in the course of that opinion, further says:

"The provision of the contract here sought to be enforced that for 10 years after its termination every invention shall be assigned to the plaintiff savors of restraint of trade. It projects itself so far beyond the period of actual employment and payment of wages that it appears plainly to be in aid of the unlawful combination. It would choke the inventive capacity of the defendant for a period so long after his employment ceased that his usefulness to himself or to any competitor would be extinguished in most instances. When this contract is multiplied by substantially all like inventors in the country, its character as aiding the combination is too clear to require further discussion."

[5] The opinion is quite lengthy, dealing as it does with a number of different phases of the general subject of monopolies and the rights of patentees, and possibly not as clearly distinguishable from the case presented in the special plea upon which appellant relies as is the case of Wall Paper Co. v. Voight, above. Nevertheless, if we have properly interpreted it and understand the fundamental principle upon which the opinion is founded, the case furnishes an apt illustration of the rule that a contract inherently invalid will not be enforced, regardless of its relation to an illegal combination. The provision of the contract pointed out and condemned in the La Chappelle Case was the one binding the employee to assign any and all improvements or inventions of his own for a period of 10 years after the contract of employment ended. It may well be said to be against public policy to permit any person, corporation, or association already in possession of patented monopolies relating to the subject to thus obtain control of the inventive mind of the country and enlarge and extend patented monopolies granted by governmental agencies. The fact appearing in the La Chappelle Case that, pursuant to the purpose of an illegal combination, a large number of like agreements were provided for and secured, only brings into clear light the illegal nature of the agreement and its force and effect when multiplied.

The principles applied in the two foregoing cases are not in conflict, we think, with general principles of law. The case of Floyd v. Patterson, 72 Tex. 202, 10 S. W. 526, 13 Am. St. Rep. 787, was one where a contract with a broker, one Leopold, was made for the future delivery of 100,000 bushels of wheat, which order was placed with the brokerage firm of Floyd & Co. for execution; Patterson paying at the time a margin in the sum of $1,000, which was increased by additional demands to $7,000, after which the trade was "closed out" with a balance due in Patterson's favor of $6,762, which was received from Floyd & Co. by the broker Leopold, but which he refused to pay over, and for which Patterson sought a recovery. Among other things, the court had this to say:

"It is well settled that a contract for the future delivery of stocks, produce, or other merchandise in which an actual delivery is not contemplated but only a payment of the difference between the contract price and the value of the article at the time agreed upon as the date of delivery, is a mere wagering contract, which will not support an action. But if the transaction has been completed and another grows out of it collateral to it, dependent upon a new consideration, the new contract is not vitiated by the taint of the old one, and will be enforced. 'It has been observed that the test whether a demand connected with an illegal act can be enforced is whether the plaintiff requires any aid from the illegal transaction to establish his case.' Gilliam, Ex'r, v. Brown, 43 Miss. 641, citing Simpson v. Blass, 2 Taunt. 246; Roby v. West, 4 N. H. 290 [17 Am. Dec. 423]. * * * "When the plaintiff shows that the defendant has received of a third party money for his use, the law from the naked fact implying a promise, the case is made out without going into the illegal transaction, and the defendant will not be permitted to set up the illegality of the original contract in order to defeat a recovery."

The court held upon the facts stated that Floyd & Co. were not liable, but that Leopold was.

The principle announced in the case of Floyd & Co. v. Patterson has been followed and applied in the cases of Hall v. Edwards (Tex. Civ. App.) 194 S. W. 674; Miller Brewing Co. v. Coonrod (Tex. Civ. App.) 230 S. W. 1099; Hartford Fire Ins. Co. v. G. H. & S. A. R. Co. (Tex. Com. App.) 239 S. W. 919; Bevering v. Smith (Tex. Civ. App.) 241 S. W. 224. In the case of Hall v. Edwards (Tex. Com. App.) 222 S. W. 167, by our Commission of Appeals, in an opinion by Son-

field, presiding judge, the following quotation from Frost v. Plumb, 40 Conn. 111, 16 Am. Rep. 18, was cited with approval:

"We understand the rule to be this: The plaintiff cannot recover whenever it is necessary for him to prove, as a part of his cause of action, his own illegal contract, or other illegal transaction; but if he can show a complete cause of action without being obliged to prove his own illegal act, although such illegal act may incidentally appear, and may be important even as explanatory of other facts in the case, he may recover. It is sufficient if his cause of action is not essentially founded upon something which is illegal. If it is, whatever may be the form of the action, he cannot recover."

The same section of our Commission of Appeals, in the case of Hartford Fire Ins. Co. v. G., H. & S. A. Ry. Co., supra, in an opinion by Mr. Justice Gallagher, declared, in substance, that, as a general rule, the defense of illegality of a contract is confined to the parties to the contract, and is not available to third parties to defeat a just claim against themselves, and that where, as the result of the execution of an illegal contract, some new title or property right vests in one of the parties thereto, relief will not be denied in a suit which is brought, not for the enforcement of the illegal contract, but for a recovery upon or enforcement of the new right or title thereby acquired.

[6, 7] Applying the test approved in the case of Floyd v. Patterson, supra, and followed by the other decisions of our own courts as stated, and which, as we think, was a controlling principle applied in the case of Continental Wall Paper Co. v. Voight, and impliedly involved in United Shoe Machinery Co. v. La Chappelle. It cannot be said to be necessary for the appellee in this case to refer to or invoke any obligatory clause of the agreements which enter into and constitute the combination alleged to be in violation of the anti-trust statutes. Appellant was not a party to those agreements, and the allegation that it is charged to be a party in the suit instituted in the federal court in Chicago, Ill., is, as to appellee, purely hearsay and cannot be accepted as fixing upon appellant the status of an actor in the conspiracy and illegal contracts. On the contrary, appellant urges that it in good faith entered into the contract upon which appellee predicated its cause of action and appellee's cause of action rests upon specified terms to be found in the contract made by it, and not found in the agreements charged to constitute a violation of the anti-trust laws. Nor can it be said, as in the La Chappelle Case, that an enforcement of the contract here sought to be enforced will directly effect interstate commerce or create a monopoly by contract.

Assuming that we are correct in our conclusions thus far, we will now endeavor to determine whether the contract appellee seeks to enforce is inherently subject to the contention upon which appellant bases its defense to the action.

[8] It is to be borne in mind that the processes leased and used are processes patented by the national government, and thereby the owner of the patented article or processes is given a monopoly not subject to attack on the ground that he, in its exercise, or one by him authorized to use it, is unlawfully acting to the disadvantage of others not so privileged. The following is said by the United States Supreme Court in the recent case of U. S. v. General Electric Co., 272 U. S. 489, 47 S. Ct. 192, 71 L. Ed. ——:

"The owner of a patent may assign it to another and convey (1) the exclusive right to make, use and vend, the invention throughout the United States; or (2) an undivided part or share of that exclusive right; or (3) the exclusive right under the patent within and through a specific part of the United States. But any assignment or transfer short of one of these is a license giving the licensee no title in the patent and no right to sue at law in his own name for an infringement. Waterman v. Mackenzie, 138 U. S. 252, 255, 11 S. Ct. 334, 34 L. Ed. 923; Gayler v. Wilder, 10 How. 477, 494, 495, 13 L. Ed. 504; Moore v. Marsh, 7 Wall. 515, 19 L. Ed. 37, and Crown Co. v. Nye Tool Works, 261 U. S. 24, 30, 43 S. Ct. 254, 67 L. Ed. 516. Conveying less than title to the patent or part of it, the patentee may grant a license to make, use, and vend articles under the specifications of his patent for any royalty, or upon any condition the performance of which is reasonably within the reward which the patentee by the grant of the patent is entitled to secure."

The case of E. Bement & Sons v. National Harrow Co., 186 U. S. 70, 22 S. Ct. 747, 46 L. Ed. 1058, is one where a combination of manufacturers owning a patent to make float spring tool harrows licensed others to make and sell the products under the patent on condition that they would not, during the continuance of the license, sell the products at a less price or on more favorable terms of payment and delivery to purchasers than were set forth in a schedule made part of the license. That was held to be a valid use of the patent rights of the owners of the patent. It was objected that this made for a monopoly. The court, speaking by Mr. Justice Peckham, said:

"The very object of these laws is monopoly, and the rule is, with few exceptions, that any conditions which are not in their very nature illegal with regard to this kind of property, imposed by the patentee and agreed to by the licensee for the right to manufacture or use or sell the article, will be upheld by the courts. The fact that the conditions in the contracts keep up the monopoly or fix prices does not render them illegal."

Speaking of the contract, he said:

"The provision in regard to the price at which the licensee would sell the article manufactured

under the license was also an appropriate and reasonable condition. It tended to keep up the price of the implements manufactured and sold, but that was only recognizing the nature of the property dealt in, and providing for its value so far as possible. This the parties were legally entitled to do. The owner of a patented article can, of course, charge such price as he may choose, and the owner of a patent may assign it or sell the right to manufacture and sell the article patented upon the condition that the assignee shall charge a certain amount for such article."

This case and the quotations therefrom that we have made were expressly adopted and approved in the case of U. S. v. General Electric Co., supra. In this connection we cite the following other cases that we think may be consulted with profit: Wilder Mfg. Co. v. Corn Products Co., 236 U. S. 165, 35 S. Ct. 398, 59 L. Ed. 525; Continental Wall Paper Co. v. Voight, 212 U. S. 227, 29 S. Ct. 280, 53 L. Ed. 246; Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 22 S. Ct. 431, 40 L. Ed. 679; General Electric Co. v. Minneapolis Electric Co. (D. C.) 10 F.(2d) 851, appeal dismissed Id. (C. C. A.) 7 F.(2d) 1020; Milliken Tomlinson Co. v. American Sugar Refining Co. (C. C. A.) 9 F.(2d) 809, rehearing denied Id. (C. C. A.) 10 F.(2d) 973; Bell v. Lamborn (C. C. A.) 2 F.(2d) 205, 207; United Shoe Machinery Co. v. U. S., 258 U. S. 451, 42 S. Ct. 363, 66 L. Ed. 708; Federal Trade Commission v. Beech Nut Packing Co., 257 U. S. 441, 42 S. Ct. 150, 66 L. Ed. 307, 19 A. L. R. 882; U. S. v. United Shoe Machinery Co., 247 U. S. 32, 38 S. Ct. 473, 62 L. Ed. 968; The Paper Bag Patent Case, 210 U. S. 405, 28 S. Ct. 748, 52 L. Ed. 1122; Providence Rubber Co. v. Goodyear, 9 Wall. (76 U. S.) 788, 19 L. Ed. 566; Pressed Steel Car Co. v. Hansen (C. C. A.) 137 F. 403, 2 L. R. A. (N. S.) 1172; Hulse v. Bonsack Mach. Co. (C. C. A.) 65 F. 864; Aspinwall Mfg. Co. v. Gill (C. C.) 32 F. 697; Pope Mfg. Co. v. Owsley (C. C.) 27 F. 100; Radio Corp. of America v. United Radio & Electric Co. (U. S. Dist. of N. J., no opinion filed); International Paper Box Machine Co. v. Wolfe Co., C. C. A. 8 Cir. 1277, decided February 4, 1926; Burr v. Duryee, Fed. Cas. No. 2,190; Steam Cutter Co. v. Sheldon, Fed. Cas. No. 13,331; Wilson v. Rosseau, 4 How. 646, 11 L. Ed. 1141; Grant v. Raymond, 6 Pet. 218, 8 L. Ed. 376; 30 Cyc. 944.

[9, 10] Such examination of the authorities as we have been able to make has led us to the conclusion that, if the combination agreements between appellee and the Texas and Standard Companies of Indiana and New Jersey are in fact monopolistic and invalid, as alleged, under the anti-trust laws, relief from the injurious consequences to the public thereby brought about must be sought in the federal courts by an application of remedies and penalties prescribed by the inhibiting statutes. We further conclude that the contract declared upon by appellee is only collateral and incidental to the alleged combination agreements, and, as such, is not inherently invalid.

Under the authorities appellee undoubtedly could, subject to exceptions not presented in this case, lawfully acquire the right to use or lease patented rights upon such reasonable terms and limitations as it chose, and nothing to the contrary is apparent to us. No facts are stated showing that 10 cents a barrel is exorbitant for the use of the cracking processes. Appellant alleged that such processes were necessary to a profitable prosecution of its business, and, in effect, that it willingly agreed to give such price. We do not think the mere conclusion of the pleader that 10 cents a barrel was excessive sufficient to outweigh the force of the facts appearing on the face of the pleadings and of the cases allowing a patentee such a wide margin in fixing prices and conditions. These observations apply as well to the limitation of gasoline production to 30,000 gallons a day. The prices charged and limitations noted seem, under the authorities cited, to be not only such as a lessor of the patented article or processes of production can lawfully impose, but also such as can only have an incidental and indirect effect in promoting or furthering the purposes of a previous and separate contract in violation of the anti-trust laws. To taint the subsidiary agreement with the fraud or illegality of the previous one, it must, under the authorities, appear that the enforcement of the latter, directly, and not indirectly, promotes the unlawful purposes contemplated in the execution of the former unlawful agreement. See U. S. v. Joint Traffic Ass'n, 171 U. S. 505, 19 S. Ct. 25, 43 L. Ed. 259; Anderson v. U. S., 171 U. S. 604, 19 S. Ct. 50, 43 L. Ed. 300; Hopkins v. U. S., 171 U. S. 578, 19 S. Ct. 40, 43 L. Ed. 290; U. S. v. E. C. Knight Co., 156 U. S. 1, 15 S. Ct. 249, 39 L. Ed. 325; Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 22 S. Ct. 431, 40 L. Ed. 679; and other cases that might be cited.

[11] The only other provision that we think necessary to particularly notice is that providing for an assignment by appellant of improvements made during the existence of the license contract. It has been held that an employer may, by an express contract with an employee, obtain a right to have transferred to the employer all discoveries made by the employee. 20 R. C. L. 1120; Dalzell v. Dueber Watch Case Mfg. Co., 149 U. S. 315, 13 S. Ct. 886, 37 L. Ed. 749. It is true that in the case of United Shoe Machinery Co. v. La Chappelle the court condemned a contract which bound the defendant to assign to the plaintiff any and all inventions, improvements, and patents which he might make during the continuance of the contract, and for ten years thereafter and for a like

period not to engage in a similar business, but it is to be observed that the contract before us is distinguishable, in that here the obligation of the lessee to assign improvements, etc., did not continue beyond the continuance of the contract which the lessee at any time might terminate after giving 60 days' notice of his desire to do so, and we do not feel prepared to say that such a provision is within itself invalid or that its observance immediately and directly promotes the purpose of the unlawful combination or affects interstate commerce.

On the whole, we do not believe that the trial court erred in sustaining the general demurrer to the special answer of appellant under consideration, and, inasmuch as no other disputed issue is presented which would authorize a reversal of the judgment, the judgment must be affirmed.