**Willena HALL et al., Appellants,**

v.

**J. D. HALL, Jr., et al., Appellees.**

No. 15468.

Court of Civil Appeals of Texas.

Dallas.

June 5, 1959.

Rehearing Denied July 17, 1959.

596

Joe F. Orr, and Rawlings, Sayers, Scurlock & Eidson, Fort Worth, for appellants.

Hugh S. Grady and Robert C. Johnson, Dallas, L. L. James, Tyler, for appellees.

DIXON, Chief Justice.

Willena Hall and Wilbert Hall, appellants here, plaintiffs in the trial court, on August 19, 1953, sued H. D. Hall, J. D. Hall, Jr., J. D. Hall, Sr., Don Hall, Robert Hall, The Visador Corporation and the Visador Co., a partnership or joint stock association composed of J. D. Hall, Jr., Don Hall, Robert Hall, "and many others." The plaintiffs are mother and son. H. D. Hall is the father of Wilbert Hall and the divorced husband of Willena Hall. The other individual

defendants are the grandfather, uncle, and cousins of Wilbert Hall.

The relationship of the parties is more easily understood after a study of the family tree, which we copy from appellants' brief:

```
                ┌ H. D. Hall          ┐ Wilbert Hall
                │ M. Willena Hall.....│
                │ (divorced 7-29-52)  │ Milton Hall
                │                     │ (witness)
J. D. Hall, Sr. ┤                     ├
                │ J. D. Hall, Jr...... │ Don Hall
                │                     │
                └                     ┘ Robert Hall
```

In their suit appellants seek an accounting and in the alternative, damages in the amount of $250,000 claimed to be due them in connection with alleged rights and royalties under the terms of a licensing agreement dated February 27, 1951, wherein Wilbert Hall is named as licensor and J. D. Hall, Jr., and J. D. Hall, Sr., are named as licensees. Though the instrument names only Wilbert Hall as licensor, appellants plead that at the time the agreement was executed Wilbert Hall and his father H. D. Hall were business partners and all rights as licensors really belonged to Wilbert Hall and his father H. D. Hall equally as partners. Willena Hall claims an interest under the terms of a judgment of divorce from H. D. Hall obtained by her in the District Court of Tarrant County, Texas, on July 29, 1952.

After a trial without a jury judgment was rendered July 19, 1958, that appellants take nothing by their suit.

H. D. Hall had been in the lumber business. His son Wilbert Hall was an employee when he was not attending college. In 1948 a fire destroyed the business, leaving H. D. Hall heavily in debt. In 1949 H. D. Hall and his son Wilbert, then 22 years of age, formed a partnership, which was conducted in the name of Wilbert Hall alone because of the creditors of H. D. Hall. This partnership was operated in Fort Worth, Texas, under the name of "Doorlight Company". Its name was later changed to "The Visador Products Company".

On March 23, 1950, an application for a patent was filed for the partnership, but in the name of Wilbert Hall, for an alleged invention called a window unit for doors, which in the application is described as follows: "This invention relates to a window unit designed for use in connection with hollow doors, the primary object of the invention being to provide a window in the form of a sliding panel which when moved to its open position, permits conversation between persons on the outside and inside of the door, without opening the door."

On August 4, 1950, Wilbert Hall was called into the military service. According to H. D. Hall the partnership business was thereup "discontinued". According to Wilbert Hall he was merely on leave of absence from the partnership during his military services.

Following the departure of Wilbert Hall into the Navy, H. D. Hall set up a place of business in Irving, Texas. His other son, Milton Hall, claims to have been a partner with his father in this business. The claim is denied by H. D. Hall. Milton is not a party to this suit, but it was stipulated by the parties hereto that the Irving business of H. D. Hall is not involved in this litigation.

On January 8, 1951, Wilbert Hall executed a power of attorney to his father H. D. Hall, granting to H. D. Hall broad powers to act for and in behalf of Wilbert Hall. A second but similar power of attorney was later executed when the partnership name was changed to "The Visador Products Company".

On January 9, 1951, the Patent Office rejected all claims made in the application for a patent for the window unit. Appellees contend that this amounted to a rejection of the application. Be that as it may, after the filing of an amended application the Patent Office on August 20, 1953, again denied all claims and marked its notice of rejection: "This rejection is *Final*."

On February 21, 1951, J. D. Hall, Sr. and J. D. Hall, Jr., entered into a five year li-

censing agreement with H. D. Hall acting for himself and by power of attorney for Wilbert Hall and their partnership. This is the contract which is the basis of appellants' suit. It recites that the application for patent for "Door Lights" is pending. Appellees were not aware of the fact that the Patent Office had already, under date of January 9, 1951, rejected all claims made in Wilbert Hall's application for a patent. H. D. Hall did not tell them of that fact. Appellees allege that they were induced to enter into the contract by H. D. Hall's representation that the patent would be granted.

The licensing agreement is much too long to copy here, but it is necessary to notice some of its terms. It contains these provisions: licensees are granted an exclusive license to manufacture "the item" according to the invention in the territory comprising the "Continental U. S. A. only"; licensees are to pay licensor a stipulated royalty on each and every product manufactured under the terms of the agreement and according to the invention, including several types of door lights, and including also vents, and louvers; licensees agree to mark plainly every light made in accordance with licensor's trademark "Visador", and the patent pending, or patent numbers; licensees shall have the right to terminate and cancel the agreement at any time they so desire; but licensee agrees following termination not to manufacture or sell the products described in the contract for a period of five years following termination; licensees agree that articles manufactured must be sold on a "nonexclusive basis" through door manufacturers and building materials dealers only.

The licensees, J. D. Hall, Sr. and J. D. Hall, Jr., as partners under the name of Doorlite Company, began manufacturing and marketing the products described in the licensing contract. J. D. Hall, Sr., invested $40,000 capital in the business. The business prospered. During the latter part of its first year of operation the royalties paid were nearly $1,000 per month. Later a corporation was formed, "Visador Corpora-

tion," which took over the partnership business of licensees. Still later the corporation was dissolved and a partnership or joint stock company was formed and named "The Visador Company". The personnel of the reorganized company consisted of fifteen persons, members of the Hall family; some of whom were acting as trustees of other members of the family. The Company did a gross business of about $280,-000 in 1952, $360,000 in 1953, $590,000 in 1954 and $800,000 in 1955.

Meantime H. D. Hall was having domestic trouble.. On January 15, 1952, his wife,. Willena Hall, one of the appellants herein. sued him for divorce. H. D. Hall testified. that he thereupon informed Willena Hall. that the application for a patent had been denied, that J. D. Hall, Sr. and J. D. Hall,. Jr., did not know of this fact, and if they discovered the truth (as they would, if she went through with her divorce), they would. cancel the licensing agreement. H. D. Hall further testified that he urged his wife to abandon her divorce suit in order that he might continue to collect royalties. Willena. Hall refused to discontinue her divorce action, so H. D. Hall soon thereafter confessed the facts to J. D. Hall, Jr.

Immediately upon learning that the patent application had been rejected, J. D. Hall, Jr., terminated the licensing contract. On. January 21, 1952, a written cancellation agreement was entered into by H. D. Hall acting for himself, for Wilbert Hall, and for the H. D. Hall-Wilbert Hall partnership on the one hand, and J. D. Hall, Sr. and J. D. Hall, Jr., on the other hand.

This cancellation agreement recites that the consideration for the licensing contract had been the obtaining of a patent by Wilbert Hall, which consideration had wholly failed because of the denial of the application for the patent. Therefore in consideration of mutual releases, the licensing contract was declared null and void, and J. D. Hall, Sr. and J. D. Hall, Jr., their heirs and assigns, were released and discharged from all claims, past and future, in connection

with the licensing agreement. It was further provided that Wilbert Hall, H. D. Hall and the Visador Products Company might retain all the money theretofore paid them whether or not paid under and by virtue of the licensing contract.

In their first, second, third and fourth points on appeal appellants in substance allege error on the part of the trial court in failing to hold that Wilbert Hall was entitled to an accounting from his father H. D. Hall for royalties actually paid to H. D. Hall for the partnership.

The application for a patent was filed March 23, 1950, in the name of Wilbert Hall only. However in the licensing agreement of February 27, 1951, the licensors are stated to be "Wilbert Hall and/or H. D. Hall and for the Visador Products Co., * * *". Wilbert Hall testified that his father had a partnership interest in the application. The trial court found as a fact that the application was filed for the "H. D. Hall * * * Wilbert Hall partnership." Considerable sums of money were paid to H. D. Hall as royalties pursuant to said licensing contract. When the licensing contract was cancelled on January 21, 1952, the written cancellation agreement expressly provided that "Wilbert Hall, H. D. Hall and the Visador Products Company may have and retain whatever money or funds they have heretofore received * * * whether * * * paid them under and by virtue of the aforesaid contract or not." It is undisputed that there has not been an accounting between Wilbert Hall and H. D. Hall for the money so received by H. D. Hall for the partnership.

The trial court concluded that the licensing agreement violated the Texas Anti-Trust Laws and the common-law rule against monopolies and was therefore void; and that the "partnership of Wilbert Hall and H. D. Hall having as one of its purposes the entering of an illegal licensing agreement, Wilbert Hall is not entitled to an accounting from his father."

It is our opinion that Wilbert Hall is entitled to an accounting from H. D. Hall; and that he is entitled to be paid by H. D. Hall his, Wilbert's, part of the payments received by H. D. Hall in behalf of the partnership, which money, under an express provision in the cancellation agreement, might be retained by Wilbert Hall, H. D. Hall and the Visador Products Company.

It was not illegal for Wilbert Hall to enter into a partnership with his father in 1949. It was not illegal for him to file the application for a patent on the window unit in 1950. It was not illegal for him to execute the written power of attorney to his father on January 8, 1951, while he was in the military service. There are no pleadings and no evidence to show that Wilbert Hall knew when he filed the application for a patent that it would be denied. In fact the uncontradicted evidence is that neither Wilbert Hall nor his mother Willena Hall actually knew that the application had been denied until the divorce matter came up in 1952, at which time Wilbert Hall came home on a leave of absence. By that time the licensing contract of February 27, 1951, had already been entered into by H. D. Hall with J. D. Hall, Sr. and J. D. Hall, Jr.

Of course, H. D. Hall, acting for the partnership, knew at that time that the Patent Office on January 9, 1951, had rejected all claims under the application. And certainly constructive knowledge of this rejection could be imputed to Wilbert Hall as a partner of H. D. Hall. Nevertheless J. D. Hall, Sr. and J. D. Hall, Jr., the victims of H. D. Hall's fraud, chose to allow the Wilbert Hall-H. D. Hall partnership to keep the money paid to the partnership prior to the cancellation agreement of January 21, 1952.

The relationship between the two partners, Wilbert Hall and H. D. Hall, was fiduciary in nature. It does not lie in the mouth of H. D. Hall, who has obtained possession of the partnership's

funds, to refuse to do equity to his partner, because of the wrong originally perpetrated by H. D. Hall on J. D. Hall, Sr. and J. D. Hall, Jr. The case of Wilbert Hall against H. D. Hall is made without going into the illegal transaction. H. D. Hall will not be permitted to set up the illegality of the licensing contract in order to defeat Wilbert Hall's recovery under his suit for an accounting. Lewis v. Davis, 145 Tex. 468, 199 S.W.2d 146; American Refining Co. v. Gasoline Products Co., Tex.Civ.App., 294 S.W. 967; Floyd v. Patterson, 72 Tex. 202, 10 S.W. 526; DeLeon v. Manuel Trevino, 49 Tex. 88; Brooks v. Martin, 2 Wall. 70, 69 U.S. 70, 17 L.Ed. 732; 10-A Tex.Jur. 288. Appellants' first, second, third and fourth points on appeal are sustained.

■ In their fifth point appellants challenge the trial court's finding that J. D. Hall, Sr. and J. D. Hall, Jr., were induced to enter into the licensing agreement by H. D. Hall's representation that all of the units described in the licensing agreement were included in the application for letters patent.

J. D. Hall, Jr., testified that H. D. Hall represented to him that he had made application for patents on the things he was manufacturing, that is, doorlights, louvers, and vents. J. D. Hall, Jr., was not permitted to see the application. The truth of the matter is that the application did not include louvers or vents at all, and included only one kind of doorlight—one with a sliding panel. The trial court obviously believed the testimony as to the alleged misrepresentation. The trial court's finding being supported by evidence is binding on this court. Appellants' fifth point is overruled.

In their sixth point appellants complain of the court's finding that the application for patent was denied sometime in 1951. It is undisputed that on January 9, 1951, the Patent Office rejected all claims made in the application. However it was not until August 20, 1953, in·response to an amendment filed December 17, 1952, that

the Patent Office again rejected all claims with the notation, "This rejection is *Final*." The trial court's finding doubtless referred to the 1951 rejection of all claims, and such finding is supported by undisputed testimony. But even if we accept August 20, 1953, as the proper date of the denial appellants' point is without merit. In the light of other undisputed facts it is immaterial which date is accepted. For on January 21, 1952, the licensing contract was cancelled by mutual agreement and Wilbert Hall, H. D. Hall and the Visador Company were allowed to retain all payments made to that date. Appellants' sixth point is overruled.

■ In their seventh point appellants contend that the court committed error in holding that neither H. D. Hall nor Wilbert Hall had any trade secret in the matters involved in the licensing agreement. Appellants here rely on the legal principle that a trade secret, though it may not be patentable, will be protected if its use involves a breach of confidence. For a fuller statement of this principle see Hyde Corporation v. Huffines, Tex., 314 S.W.2d 763; K. & G. Oil Tool & Service Co. v. G. & G. Fishing Tool Service, Tex., 314 S.W.2d 782; Vann v. Toby, Tex.Civ. App., 260 S.W.2d 114; and Franke v. Wiltschek, 2 Cir., 209 F.2d 493.

We do not disagree with the holdings in the above-cited cases, but in our opinion such holdings are not applicable in this case.

The trial court made the following finding of facts: "The doorlights, vents and louvers set out in the licensing agreement were simple in design and could be easily reproduced by any reasonably experienced workman. H. D. Hall and Wilbert Hall had manufactured and sold these items to the public before the licensing agreement was entered into and the manner of making and installing them was widely known. Neither H. D. Hall nor the plaintiffs had any trade secret in any of the matters involved in the licensing agreement."

We shall not quote from the lengthy testimony on this point. Suffice it to say that the evidence as to the door-lights, louvers and vents is sufficient to support the court's finding, and to come within the holding of our Supreme Court in Wissman v. Boucher, 150 Tex. 326, 240 S. W.2d 278. There is testimony that the nature of the units and the manner of making them were widely known. Moreover there was no breach of contract. As we shall point out later the licensing contract was cancelled by mutual agreement and released licensees completely. Further, since H. D. Hall, representing appellants, perpetrated a fraud on the licensees in inducing them to enter into the licensing contract, appellants are not in a position to claim a breach of confidence on the part of licensees. Appellants' seventh point is overruled.

In their eighth point appellants say that the trial court erred in holding that the licensing contract was in violation of the Anti-Trust Statutes of the State of Texas, Art. 7426, Vernon's Ann.Civ.St. The licensing contract purported to grant exclusive permits to manufacture and sell the products named together with numerous restrictions pertaining to their sale. The rejection of the application for patent and the fact that trade secrets were not involved made these exclusive permits and restrictions objectionable under our Anti-Trust Statutes. Appellants' eighth point is overruled.

In their ninth point appellants argue that Wilbert Hall was entitled to an accounting for a five year period beginning February 27, 1951, because there had been a breach of contract and an abuse of confidence by J. D. Hall, Sr. and J. D. Hall, Jr. There is no merit to this point. J. D. Hall, Sr. and J. D. Hall, Jr., as shown by the findings of the trial court and supporting evidence were the victims, not the perpetrators, of fraud and abuse of confidence. Nor was there any breach of contract. The licensing contract was cancelled pursuant to its own terms and by mutual agreement on Jan. 21, 1952. All royalties had been paid up to that date, and the Wilbert Hall-H. D. Hall partnership was permitted to retain all royalties so paid. Appellants' ninth point is overruled.

In their tenth point appellants say that the court erred in holding that no fraud was perpetrated on appellants in connection with the cancellation of the licensing agreement. This assertion is made especially in behalf of appellant Willena Hall. She claims that the cancellation agreement was entered into soon after she filed suit for divorce in order to eliminate any community interest she might have in the royalty payments to be made under the licensing contract.

The evidence shows that H. D. Hall went to his wife Willena Hall when he learned she was about to sue him for divorce and begged her to desist because, in the property settlement which must follow it would be disclosed that no patent existed, a fact of which J. D. Hall, Sr. and J. D. Hall, Jr., were unaware. Apparently Willena Hall herself did not know until that time all claims made in connection with the patent had been rejected by the Patent Office. Anyway she insisted on proceeding with her divorce action. H. D. Hall then confessed to J. D. Hall, Jr., that all claims under the application had been rejected by the Patent Office. It was soon thereafter that the cancellation agreement was executed.

The original licensing agreement expressly provided that the licensees might cancel the contract at any time they desired. Since the contract was supported by a consideration, and had been partly performed, the cancellation provision was valid. Foster v. Wright, Tex.Civ.App., 217 S.W. 1090; 10-A Tex.Jur. 318–322. So it must be held that in cancelling the contract appellees, regardless of their motive, were merely exercising a right granted to them under the contract itself. Though under the circumstances appellees might well have demanded a return of the royalties already

paid, they allowed the Wilbert Hall-H. D. Hall partnership to keep said royalties. It is to be remembered also that the written cancellation contract was entered into by mutual agreement. H. D. Hall, exercising the power of attorney granted to him by Wilbert Hall, executed it in behalf of the partnership. It is not claimed that the power of attorney under which he acted was in any way invalid.

Appellants list seven other matters which they claim indicate fraud in connection with the cancellation of the license agreement. Because of consideration of space we shall not list these seven matters or discuss them separately. Suffice it to say that the trial court found no fraud on the part of appellees, a finding supported by the evidence. Appellants' tenth point is overruled.

■ In their eleventh point appellants take the position that they are entitled to an accounting from appellees even if it be held that there is some provision in the licensing contract in violation of the Anti-Trust Statutes. We have already held that Wilbert Hall is entitled to an accounting from H. D. Hall for royalties actually paid to the partnership prior to cancellation, but is not entitled to any royalties thereafter. Mrs. Willena Hall had her property settlement with H. D. Hall upon obtaining her divorce on July 29, 1952. The royalty payments had been made to H. D. Hall before the divorce. The licensing contract has been cancelled and the payments had ceased before Willena Hall obtained her divorce. Neither of appellants may justly claim any royalty payments to be due following the cancellation of the licensing contract regardless of whether the contract contained provisions in violation of the Anti-Trust Statutes. Their eleventh point is overruled.

In their twelfth point appellants say that the court erred in holding that appellants' cause of action against the partnership, Visador Company, was barred by the two year and the four year statutes of limitation, Vernon's Ann.Civ.St. arts. 5526, 5529. The Visador Company is the partnership formed by fifteen members of the Hall family including J. D. Hall, Sr. and J. D. Hall, Jr. It took over the assets of the Visador Corporation and has continued the manufacture and sale of various items including door lights, louvers and vents.

■ Appellants charge that appellees had breached the licensing contract beginning January 21, 1952. It was on this date that the cancellation agreement was signed. We do not believe that appellants had any cause of action against appellees (except Wilbert Hall's action for accounting against H. D. Hall), but if they did, their cause of action arose not later than January 21, 1952. Visador Company, a partnership, was not a party to the licensing agreement. When it was formed in March 1953 it did not assume any obligations under the licensing contract. The cause of action against it is not based on a written contract. Visador Company was not made a party to the suit until December 1956. It was not served with citation until January 31, 1957. We agree with the trial court that by that time appellants' suit against Visador Company, a partnership, was barred under our two year and four year Statutes of Limitation. Appellants' twelfth point is overruled.

The judgment of the trial court in favor of H. D. Hall that Wilbert Hall take nothing in his suit for accounting against H. D. Hall for royalties actually paid to H. D. Hall for Wilbert Hall-H. D. Hall partnership is reversed and the cause as between said parties, remanded for another trial.

The judgment in favor of appellees that appellants take nothing is affirmed except as otherwise held in the next preceding paragraph hereof.

Reversed and remanded in part, and affirmed in part.